IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TERNELL L. BROWN<br>*Plaintiff,*<br><br>versus<br><br>BATON ROUGE POLICE DEPARTMENT, TROY LAWRENCE, JR., IN HIS INDIVIDUAL CAPACITY, MATTHEW WALLACE, IN HIS INDIVIDUAL CAPACITY, UNKNOWN FEMALE OFFICER, IN HER INDIVIDUAL CAPACITY, MURPHY PAUL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, CITY OF BATON ROUGE, AND PARISH OF EAST BATON ROUGE<br>*Defendant.* | CIVIL ACTION NO. 23-01313-JWD-EWD<br><br>JUDGE DEGRAVELLES<br><br>MAGISTRATE JUDGE WILDER-DOOMES |

**BRIEF IN SUPPORT OF
MOTION TO DISMISS, OR ALTERNATIVELY,
MOTION FOR A MORE DEFINITIVE STATEMENT**

Ternell Brown was arrested during an otherwise lawful traffic stop after Detective Matthew Wallace of the Baton Rouge Police Department discovered a pill bottle in her possession that contained several prescription medications. She was transported to a BRPD facility on Plank Road where the investigation continued, culminating in a strip search by a female officer. No other weapons or drugs were found on her person, and after confirming Brown had a valid prescription for each of the drugs, she was released without charges.

In this § 1983 action, Brown alleges that her Fourth Amendment rights were violated when Detective Wallace and his colleagues arrested her "without warrant and without probable cause" (Count II) and later strip-searched her (Count I). She claims those actions also violate a similar provision in the Louisiana Constitution of 1974 (Count VII). Brown also accuses the officers of committing several torts against her, including battery, assault, and intentional infliction of emotional distress, amongst others (Counts V, VI, VII, VIII, and IX). Finally, Brown alleges that the BRPD (through the City of Baton Rouge/Parish of East Baton Rouge) maintains and enforces an unconstitutional strip search policy (Counts III and IV).

As to Detective Wallace, there are two theories of § 1983 liability: that he first violated Brown's constitutional rights when he arrested her without probable cause and then violated her rights again by participating in an unconstitutional strip search. Even accepting the allegations of the Amended Complaint (Doc. 64) as true, Detective Wallace is entitled to qualified immunity as to both theories of liability against him.

1. **Even at the pleading stage, Brown bears the burden of negating Detective Wallace's invocation of the qualified immunity defense.**

The law in this circuit is clear: once the qualified immunity defense is invoked, "[t]he plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct" according to that law. *Kokesh v. Curlee*, 14 F.4th 382, 392 (5th Cir. 2021).

At the pleading stage, the plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face" to survive a Rule 12(b)(6) motion to dismiss. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

That said, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Detailed factual allegations are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009).

When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (per curiam) (en banc) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Put another way, a court evaluating such a challenge must determine that the plaintiff's pleadings "assert facts which, if true, would overcome the defense of qualified immunity." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014).

2. **Detective Wallace did not violate Brown's rights when she was arrested for violating Louisiana law relative to the possession of controlled dangerous substances and legend drugs.**

Detective Wallace contends that he is entitled to qualified immunity with respect to Brown's claims that her arrest violated the Fourth Amendment. In general, the doctrine of qualified immunity protects public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) Courts apply a two-pronged analysis to determine whether a government official is entitled to qualified immunity, inquiring: (1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231(2009).

In her Amended Complaint, Brown alleges that on June 10, 2023, she and her husband were stopped by BRPD officers Detective Wallace and Ofc. Lawrence in the 2500 block of Plank Road.[1] (Doc. 64, ¶ 6) During the search, Detective Wallace "discovered several bottles of prescription medication belonging to Mrs. Brown." (Doc. 64, ¶ 11) Brown did not have copies of her prescriptions with her but assured the officers that "she is in lawful possession of the pills as they had been prescribed to her." (Doc. 64, ¶ 12) On that basis, Brown was transported to the BRAVE Cave while the officers further investigated whether she had committed a drug offense. (Doc. 64, ¶¶ 20-21)

---

[1] The Amended Complaint does not disclose the reasons for the stop – illegal tint and a computer check indicating lapsed auto insurance. Nevertheless, the Amended Complaint does not suggest, much less allege, that the traffic stop was unconstitutional.

It should be noted that the Amended Complaint describes a roadside interaction between Brown and Detective Wallace that is starkly at odds with reality. Thankfully, this portion of their exchange was captured by Detective Wallace's body-worn camera. That BWC video was previously offered as Exhibit 64-2 in support of a prior filing by the City/Parish. The Court can – and should – review the BWC when considering this motion.

In weighing a motion to dismiss, in addition to the complaint itself, the Court may "also consider '[d]ocuments that a defendant attaches to a motion to dismiss ... if they are referred to in the plaintiff's complaint and are central to her claim.'" *Sligh v. City of Conroe, Texas*, 87 F.4th 290, 297–98 (5th Cir. 2023) If an allegation is qualified by the contents of an exhibit attached to the pleadings, but the exhibit instead contradicts the allegation, "the exhibit and not the allegation controls." *Id.* (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004)).

Here, Detective Wallace's BWC video previously filed in the record at Exhibit 64-2 is specifically adopted by reference here.[2] Brown cites the BWC in her Amended Complaint in paragraph 23. Accordingly, to the extent that the BWC video contradicts Brown's allegations, the BWC video should control.

The BWC confirms the legality of the stop, the initial search of the vehicle, and Brown's arrest. Detective Wallace had reasonable suspicion to conduct the traffic stop because he observed window tint that he believed violated La. R.S. 32:361.1.[3] And upon running the vehicle's license plate, he learned the car's automobile insurance had lapsed and

---

[2] Detective Wallace has not been provided access to a downloadable version of the BWC video such that he can attach a copy to this motion. At present, BRPD has only granted him access to view – but not save – the video. The reason offered by BRPD for withholding the video is a pending investigation that exempts the video from unrestricted production.

[3] Again, Brown does not appear to allege the traffic stop was unlawful.

was presumptively uninsured in violation of La. R.S. 32:861. That discovery further justified the traffic stop. *United States v. Broca-Martinez*, 855 F.3d 675 (5th Cir. 2017) (holding officer had reasonable suspicion to stop a vehicle based on a database stating the vehicle had "unconfirmed" insurance status); also *Kansas v. Glover*, 140 S.Ct. 1183 (2020) (holding deputy had reasonable suspicion to stop the vehicle registered to the defendant based on a commonsense inference that the defendant, whose license had been revoked, was likely the driver).

Once the stop was initiated, Detective Wallace observed an open container of alcohol, a can of "Twisted Tea," in plain view in the front passenger compartment of the vehicle, in violation of La. R.S. 32:300. Detective Wallace immediately advised Brown and her husband of their *Miranda* rights. The search of the passenger compartment was justified because it was reasonable to believe evidence relevant to the crime of the current arrest ("possession of alcoholic beverages in a motor vehicle") might be found. *Arizona v. Gant*, 556 U.S. 332 (2009). It was during this search that Detective Wallace found the AP-9 semi-automatic pistol and assorted prescription drugs in Brown's purse.[4]

But even confining the analysis to the four corners of the Amended Complaint, Brown alleges conduct that warranted her arrest under Louisiana law. Brown admits she had several "prescription medicines" in her possession without immediate access to the prescriptions themselves. Brown never identified what the medication was, but assuming they were "prescription," they were either a "controlled dangerous substance" or a "legend drug."

---

[4] Although Brown was *de facto* arrested while Detective Wallace investigated the open container, it seems the discovery of assorted prescription medicine in Brown's purse shifted the focus of the investigation.

La. R.S. 40:961 defines both:

(8) "Controlled dangerous substance" means any substance defined, enumerated, or included in federal or state statute or regulations, 21 CFR 1308.11 through 1308.15 or R.S. 40:964, or any substance which may hereafter be designated as a controlled dangerous substance by amendment of supplementation of such regulations or statute.

. . .

(25) "Legend drug" means any drug or drug product bearing on the label of the manufacturer or distributor, as required by the federal Food and Drug Administration, the statement "Caution: Federal law prohibits dispensing without prescription".

Louisiana law criminalizes the possession of a controlled dangerous substance, regardless of whether the substance is classified in Schedule II, III, or IV. Under each of the relevant statutes, "[i]t is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule [II, III, or IV] unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner." La. R.S. 49:967(C) (Schedule II); La. R.S. 49:968(C) (Schedule III); La. R.S. 49:969(C) (Schedule IV). Similarly, Louisiana law criminalizes the possession of a legend drug "except upon the order or prescription of a physician or licensed health care practitioner." La. R.S. 40:1060.13. The violation of either statute is punishable by substantial imprisonment or fines.

The fact that Brown was able to subsequently demonstrate she had a prescription for each pill does not negate the legality of her arrest. More than 35 years ago, the Fifth Circuit recognized that, in keeping with La. R.S. 40:990(A), a valid prescription is a defense to a possession charge that *the defendant must prove* in a criminal prosecution. *Woods v. Butler*, 847 F.2d 1163, 1168; 1988 WL 58671 (5th Cir. 1988) (holding the existence of a

valid prescription to be a defense to the crime of possession of a controlled dangerous substance). The *Woods* decision undermines Brown's suggestion that Detective Wallace was required to prove the absence of a valid prescription before arresting Brown for possession. Thus, when Detective Wallace told Brown that "a judge would sort it out," he accurately relayed the spirit, if not the letter of the law.

Brown's allegation that she possessed prescription medication without a prescription justified her arrest. Because her Fourth Amendment rights against an unlawful seizure were not violated when she was arrested, Detective Wallace is entitled to qualified immunity on Count II.

**3. Brown cannot demonstrate that her strip search violated a clearly established right.**

Before discussing Brown's unconstitutional search allegations, Detective Wallace first notes that the Amended Complaint is internally inconsistent as to the extent of his role in the search. Initially, in Paragraphs 24 and 25, Brown alleged that "Defendants Lawrence, Wallace, and Alvarado subjected Mrs. Brown to Strip and Body Cavity searches" by "forc[ing] her to spread her vagina and buttocks for inspection, and examin[ing] her vagina using a flashlight." (Doc. 64) But later, in Paragraph 179, Brown alleged that she "was subjected to an offensive, unwarranted, and invasive search of her person in an open warehouse by ALVARADO," omitting Detective Wallace and Officer Lawrence and suggesting they were not directly involved in the search itself.

In any event, Detective Wallace is entitled to qualified immunity. A plaintiff suing for a constitutional violation has the ultimate burden to show that the defendant violated a constitutional right—that is, the plaintiff must make this showing whether or not qualified immunity is involved. But when qualified immunity is involved, at least in this circuit, a

plaintiff has the additional burden to show that the violated right was "clearly established" at the time of the alleged violation. See *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020)

Thus, to overcome the qualified immunity defense, Brown must show that the right at issue was "clearly established" at the time of her strip search. See *Pearson v. Callahan*, 555 U.S. at 232. To answer that question in the affirmative, Brown must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity. *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (internal quotation marks and citation omitted). Although this does not mean that "a case directly on point" is required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).

In this regard, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). It likewise "shields an officer from suit when [the officer] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [the officer] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). In short, "[w]hen properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743.

Consequently, "[q]ualified immunity is justified unless no reasonable officer could have acted as [the defendant officer] did here, or every reasonable officer faced with the same facts would not have [acted as the defendant officer did]." *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019); *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) ("The precedent must be

clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know.")

According to the Amended Complaint, Brown was searched following her arrest and transported to a BRPD facility to further investigate the prescription medication in her possession. Brown cannot identify a single precedent, much less show a "robust consensus of persuasive authority," that would prohibit BRPD officers from strip-searching her under the circumstances of her arrest.

In fact, the weight of the law in this circuit appears to condone a search like that conducted here. *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1005; 2003 WL 22890399 (5th Cir.2003) ("We have allowed strip searches in custodial situations but, consistently, not when the suspect has committed only a minor offense and there exists no reasonable suspicion that he might possess weapons or contraband.") The Fifth Circuit has held that, under the appropriate circumstances, a visual body cavity of an individual in lawful detention may be constitutionally acceptable. *Parker v. Woods*, 834 Fed.Appx. 92; 2020 WL 6818436, at *3 (5th Cir.2020); see also *Kelly v. Foti*, 77 F.3d 819, 821; 1996 WL 91559 (5th Cir.1996) ("Jail officials may strip search a person arrested for a minor offense and detained pending the posting of bond only if they possess a reasonable suspicion that he is hiding weapons or contraband.")

Here, Brown was arrested for possession of a controlled dangerous substance or legend drug without a prescription. Considering Brown's size and the opportunity it provided for her to secret contraband her person, the nature of the crime, and the post-arrest custodial setting of the private BRPD interrogation facility, the BRPD officers

believed they were justified in strip-searching Brown. Even if this Court were to later determine that Brown's strip search violated the Fourth Amendment, Detective Wallace is nevertheless entitled to qualified immunity because there was no clearly established precedent prohibiting such a search at the time it was conducted.

4. **In the event Brown's claims against Detective Wallace are not dismissed, Brown should be ordered to amend her complaint again to "make a more definitive statement" and eliminate the disfavored "shotgun pleading" style she has employed.**

In the event all of Brown's claims against Detective Wallace are not dismissed on qualified immunity grounds, Brown should be ordered to amend her petition again to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. In response to the original complaint, Officer Troy Lawrence, Jr. filed a "Motion for More Definitive Statement" (Doc. 49), attacking the vagueness of the allegations contained therein. Brown has since amended her complaint (Doc. 64), but the form and essential substance remain unchanged. For that reason, the arguments marshaled by Lawrence apply with equal force to the amended complaint.

Similar to her original complaint, Brown's Amended Complaint first describes her June 10, 2023, arrest and search (¶¶ 6-28) and the BRPD strip-search policy (¶¶ 29-32), before veering sharply to the irrelevant. Most of the remaining allegations concern unrelated incidents (Clarence Green, ¶ ¶ 35-38, 84-77, 155; Shermaine Reed, ¶ ¶ 78-96; an incident in December 2022, ¶¶ 110-117; Holden Sanders and Emanuel Chavis, ¶ ¶ 118-127); Jeremy Lee, ¶¶ 128-150; Alton Sterling, ¶¶ 156-157), non-parties to the litigation (¶¶ 63-76), irrelevant disciplinary proceedings (¶¶ 97-109, 151-153), amongst other things.

Finally, in paragraph 162, Brown returns her focus to June 10, 2023, and asserts causes of action against the defendants.

Two aspects of the Amended Complaint are most problematic from a Rule 8 perspective. First, each numbered "Count" asserting a cause of action against a defendant (or defendants) begins with: "Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein." The problem with that, of course, is that the preceding paragraphs cover a variety of incidents, topics, and parties that are not involved in the June 10 interaction with Ternell Brown. For instance, in Count I, after Brown incorporates each of the foregoing 161 paragraphs, she summarily declares: "As more fully described above, Defendants Troy Lawrence, Jr., Matthew Wallace, and Alvarado deprived Plaintiff of her constitutional right to be free from unreasonable searches." (R. 64, ¶ 163) Not only is there no articulation of the acts Brown believes constitute a violation of her right to be free from unreasonable searches, but she does also not identify which of the named officers committed each act. Instead, she lumps them together to effectively allege wrongdoing by an employee of the BRPD.

That's precisely the kind of "shotgun pleading" style the Middle District has repeatedly disfavored. In *Scott v. City of Baton Rouge/Par. of E. Baton Rouge*, CV 22-00488-BAJ-EWD, 2023 WL 3746477, at *2 (M.D. La. May 31, 2023), *reconsideration denied*, CV 22-00488-BAJ-EWD, 2023 WL 3971377 (M.D. La. June 13, 2023), Judge Jackson "cautioned against this 'everything but the kitchen sink' approach, explaining that 'shotgun pleadings' come in various forms, but their "unifying characteristic ... is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."

Illustrating the issue is "Count I" concerning searches of Brown. There are arguably several "searches" of Brown during her interaction with BRPD on June 10 that are described in the Amended Complaint. Despite that, she fails to plead which search she contends was constitutionally inadequate and which specific officer engaged in conduct she believes amounted to the violation. Had she done so, Detective Wallace would have been informed of the specific claims he needs to defend against. When Brown alleges that Detective Wallace "deprived [her] of her constitutional right to be free from unreasonable searches," is she referring to Paragraph 10, where she alleges that "officers searched the vehicle without Mrs. Brown or her husband's consent or a warrant," or Paragraphs 24 and 25, wherein she describes her strip search at the BRAVE Cave? Perhaps she intends to allege Detective Wallace is liable in connection with both, but they are different searches in vastly different circumstances and subject to different standards of reasonableness. Combining them together deprives Detective Wallace of the ability to respond to each claim. Rule 8 requires "a short and plain statement of the claim." Brown should be ordered to amend her petition within 21 days to assert a "short and plain" matter, the factual basis of each discrete claim against each defendant.

## CONCLUSION

Detective Wallace is entitled to qualified immunity based on the plaintiff's pleadings alone. Not only does she allege facts demonstrating probable cause to arrest her, but she also fails to identify the clearly established right that was violated when she was later strip-searched. In the alternative, and only if the Court denies Detective Wallace's motion to dismiss, the Court should grant his motion for a more definitive statement and order Brown to amend her petition to identify the specific acts she contends violated her constitutional

rights and which defendant committed them. Absent that amendment, Detective Wallace cannot adequately defend against he plaintiff's shotgun-style pleading.

        Respectfully submitted:

        B<small>ABCOCK</small> P<small>ARTNERS</small>, <small>LLC</small>

        _____
        **Chase Tettleton** (32721), **Lead Attorney**
        **Stephen Babcock** (26792)
        **Adrian P. Smith** (38077)
        10101 Siegen Lane, Bldg. 3C
        Baton Rouge, LA 70810
        (225) 293-8787
        (225) 761-9088 (fax)
        *ct@stephenbabcock.com*
        A<small>TTORNEYS FOR</small> M<small>ATTHEW</small> W<small>ALLACE</small>

**CERTIFICATE OF SERVICE BY ELECTRONIC FILING**

  I, Chase Tettleton, certify that on the 22nd day of March, 2024 I filed the foregoing *Brief in Support of Motion to Dismiss, or Alternatively, Motion for a More Definitive Statement* electronically through the district court's CM/ECF system, which served by electronic means, all participating counsel of record as reflected on the Notice of Electronic Filing, generated by the CM/ECF system.

        _____
        Chase Tettleton (LA Bar Roll No. 32721)