UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

_____

TERNELL L. BROWN,

    Plaintiff,

v.

TROY LAWRENCE, JR., in his individual capacity, MATTHEW WALLACE, in his individual capacity, KATHERINE ALVARADO, in her individual capacity, BRPD OFFICER JOHN DOE, in his Individual capacity, CITY OF BATON ROUGE, and PARISH OF EAST BATON ROUGE.

    Defendants.

_____

No. 23-CV-1313-JWD-EWD

**RESPONSE IN OPPOSITION TO
TROY LAWRENCE JR'S MOTION TO DISMISS**

    Unlike his colleague, it does not appear that Ofc. Lawrence argues that the Fourth Amendment allows police officers to seize a grandmother for the "crime" of carrying prescription medication (with a copy of her prescription on her cell phone); nor does he seem to argue that the Fourth Amendment permits police officers to inspect the vagina and rectum of a person based on "reasonable suspicion." (To the extent that he does, Ms. Brown adopts the arguments she has previously made—at great length—explaining why such

conduct is illegal.[1]) Rather, his defense seems to be: "Yes, but *I* didn't do it." This conclusion is only tenable if one ignores what Ms. Brown actually alleges in her complaint, as Ofc. Lawrence's motion improperly does.

### I.  Ms. Brown plausibly alleges that Troy Lawrence Jr. is liable for her unlawful seizure

Because Ofc. Lawrence simply ignores the following factual allegations, Ms. Brown is obliged to remind the Court of what her complaint actually says:

- Lawrence arrived on the scene within 15 seconds [of the initial traffic stop] to assist in the seizure of the car's passengers. Compl. ¶ 9.

- Lawrence was immediately next to the passenger side door when the passenger exited. Compl. ¶ 11.

- Lawrence ordered Mrs. Brown to place her hands behind her back and placed her in handcuffs. Compl. ¶ 12

- Mrs. Brown informed Lawrence at least four times that she was in lawful possession of the pills as they had been prescribed to her and offered to show proof of this fact. Lawrence ignored Mrs. Brown's efforts to demonstrate that she had prescriptions for the pills. Compl. ¶¶ 17-18.

- Lawrence informed Mrs. Brown that she was not allowed to carry multiple prescriptions in the same bottle. This is false. Compl. ¶¶ 18-19.

- Instead of viewing her prescriptions while still on-scene, Lawrence informed her that a judge would sort it out. Compl. ¶ 21.

- Lawrence falsely informed her that she was being "taken to jail" for possession of a controlled firearm with a CDS. Compl. ¶ 21.

- Lawrence then ordered Mrs. Brown into a BRPD vehicle driven by a colleague. He forcibly (i.e., without her consent) transported Mrs. Brown to "the BRAVE Cave" by ordering her into his colleague's vehicle in handcuffs. Compl. ¶ 23.

---

[1] *See* Dkt. 52 (motion for preliminary injunction); Dkt. 73 (reply in support of motion for preliminary injunction); Dkt. 87 (memorandum in opposition to MTD-City/Parish); Dkt. 88 (memorandum in opposition to MTD-Wallace).

- Lawrence drove to the BRAVE Cave separately and met DOE and met Mrs. Brown there. Compl. ¶ 23.

- The reason Mrs. Brown was brought to "the BRAVE Cave" was *not* to be "processed" for eventual transfer to the East Baton Rouge Parish Prison; rather, she was brought to the facility to be further searched and questioned. Compl. ¶ 25.

- Mrs. Brown was held at "the BRAVE Cave" for over two hours. Compl. ¶28.

How much more clearly can Ms. Brown allege that Troy Lawrence Jr. participated in her unlawful kidnapping? The fact that other individuals engaged in *some other parts* of this wrongdoing may be evidence that Ofc. Lawrence participated in a conspiracy against rights under 18 U.S.C. § 241, but it does not excuse or vitiate his liability for the unlawful seizure of Ms. Brown.

To be clear, Ms. Brown alleges that Ofc. Lawrence personally deprived her of her civil rights by participating in her unlawful seizure, but at the very least, her complaint plausibly alleges that he is liable for this wrongdoing as a culpable "bystander." This Court recently provided a comprehensive overview of the relevant doctrine within the Fifth Circuit, which Plaintiff adopts as an accurate statement of the law. *See* Second Oral Argument Notice, Dkt. 226, *7-*13, *Imani v. City of Baton Rouge*, Case No. 17-cv-439-JWD-EWD (M.D.La. 08/14/20). As explained there, "an officer may be liable under § 1983 under [this] theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.' " *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted). Here, the elements are clearly met: Ofc. Lawrence knew that a fellow officer was violating Ms. Brown's rights to be free from unreasonable seizure, he could have

3

prevented the harm, and yet he acquiesced. (Again, he did much more than "acquiesce"; he personally did it.)

### II. Ms. Brown plausibly alleges that Troy Lawrence Jr. is liable for her unlawful search.

Similarly, Ofc. Lawrence's entire argument regarding his entitlement to qualified immunity for the unlawful search of Ms. Brown's vagina and rectum is the following: "Because Officer Lawrence did not perform the search in question, he did not engage in conduct that violated Plaintiff's clearly established rights under the Fourth Amendment." Dkt. 85-1, *8. Again, Ofc. Lawrence simply ignores the relevant factual allegations.

- Lawrence ordered Mrs. Brown to place her hands behind her back and placed her in handcuffs. Compl. ¶ 12

- Lawrence falsely informed her that she was being "taken to jail" for possession of a controlled firearm with a CDS. Compl. ¶ 21.

- Lawrence then ordered Mrs. Brown into a BRPD vehicle driven by a colleague. He forcibly (i.e., without her consent) transported Mrs. Brown to "the BRAVE Cave" by ordering her into his colleague's vehicle in handcuffs. Compl. ¶ 23.

- Lawrence drove to the BRAVE Cave separately and met DOE and met Mrs. Brown there. Compl. ¶ 23.

- The reason Mrs. Brown was brought to "the BRAVE Cave" was *not* to be "processed" for eventual transfer to the East Baton Rouge Parish Prison; rather, she was brought to the facility to be further searched and questioned. Compl. ¶ 25.

- Lawrence turned off his body-worn cameras at "the BRAVE Cave," even though his investigation into Mrs. Brown was ongoing. Compl. ¶ 29.

- Defendant Lawrence subjected Mrs. Brown to Strip and Body Cavity searches. Compl. ¶ 30.

- He did this by soliciting a female officer to inspect Mrs. Brown's vagina and rectum with a flashlight while he and Wallace remained on scene at the warehouse. Compl. ¶ 31.

4

- Only after the strip-search did Lawrence and Wallace let her go. Compl. ¶ 32

Lawrence apparently seeks a ruling that if he personally did not look at Ms. Brown's vagina, he cannot be held civilly liable for soliciting (and, if the complaint is construed in plaintiff's favor, likely directing) her sexually humiliating search; he cites no authority for this radical proposition. In the alternative, Ms. Brown urges that because he personally solicited the relevant wrongdoing, he is at minimum liable for his colleague's wrongdoing as a "bystander." *Whitley*, 726 F.3d at 646.

### III. Ms. Brown plausibly alleges that Troy Lawrence Jr. is liable for her unlawful search.

"Section F" of plaintiff's motion to dismiss is particularly galling. Lawrence moves to dismiss *all* of Ms. Brown's state law claims of battery, assault, IIED, false imprisonment, and negligence against Lawrence, falsely stating that Ms. Brown's complaint "fails to allege anything more than a 'formulaic recitation of the elements' of Plaintiff's state law causes of action." Dkt. 85-1, *10. The irony: It is Lawrence who is offering "formulaic recitations" of arguments copy-and-pasted from other briefs, without engaging in any way, shape, or form with the factual allegations contained in Ms. Brown's complaint.

**Battery –** As alleged in Ms. Brown's complaint: "In the instant case, officers Lawrence and Wallace with the Baton Rouge Police Department, in their capacity as officers employed by BRPD, initiated offensive physical contact with Ms. Brown for possible traffic violations. This was a battery. She was placed in handcuffs by Lawrence, another battery. She was transferred to the custody of DOE, who also touched her in a harmful or offensive manner. She was subsequently taken to the BRAVE Cave for over two hours where she was subject to unconstitutional Strip and Body Cavity searches. The strip search,

5

conducted by Alvarado at the request of Wallace and Lawrence, was still another battery. After the unconstitutional searches she was released from the facility without being charged with a crime." Compl. ¶ 175. The aforementioned paragraph is not a bare recitation of the elements of a state tort; it obviously satisfies the low bar established by Fed. R. Civ. P. 12(b)(6) for adequately stating a claim.

**Assault –** Lawrence likewise accuses Plaintiff of simply providing a "formulaic recitation of the elements" of assault, too. But again Lawrence ignores the actual words contained in the complaint that he is challenging. Yet again, he appears to simply not have read the complaint. As the complaint makes clear:

> In the instant matter, an assault occurred when Mrs. Brown was detained by Lawrence and Wallace on the scene of the traffic stop and was placed in the back of a marked unit which she physically could not fit into despite her visual discomfort. A second assault occurred when Mrs. Brown was illegally arrested by Lawrence and Wallace and removed from the presence of her husband despite providing proof at the scene of her original detention that she was lawfully in possession of her prescription medicine. A third assault occurred when Mrs. Brown was subjected to an offensive, unwarranted, and invasive search of her person in an open warehouse by ALVARADO at the request of Wallace and Lawrence. All the above listed instances were assaults as they placed Mrs. Brown in apprehension of receiving further injury at the hands of BRPD Officers.

Compl. ¶ 176. Again, Lawrence does not explain in what way the foregoing fails to state a claim upon which relief can be granted for the Louisiana tort of assault.

**False Imprisonment –** Lawrence likewise accuses Plaintiff of simply providing a "formulaic recitation of the elements" of false imprisonment, too. Yet, after providing that formulaic recitation of the elements of false imprisonment under Louisiana law (it is the "intentional confinement or detention of another, without his consent and without proper legal authority"), Ms. Brown's complaint goes on to explain how, precisely, the alleged conduct constitutes such a tort. Specifically, she explains:

> In the instant matter, Mrs. Brown was held for over two hours in the "BRAVE Cave" where she was subject to unconstitutional Strip and Body Cavity searches without probable cause or an arrest warrant. After the unconstitutional searches she was released from the facility without being charged with a crime. Wallace, Lawrence, Alvarado, and Doe all participated in her false imprisonment as detailed above.

Compl. ¶ 176.

The same exercise could be repeated for Ms. Brown's IIED and negligence claims. The point is this: Lawrence is not engaged in a good faith effort to challenge the sufficiency of Ms. Brown's allegations. He is simply raising frivolous 12(b)(6) claim because he knows, that by raising a vague and unspecified Rule 12(b)(6) claim as to each of the state law claims—falsely asserting that Ms. Brown's complaint is nothing more than a "formulaic recitation of the elements"—he can create hours of additional work for opposing counsel and delay discovery in this matter for several more months. This is the definition of sanctionable conduct under Rule 11.

### IV. Ofc. Lawrence is not entitled to qualified immunity for Ms. Brown's claim under Art. I, § 5 of the Louisiana Constitution

Lawrence's qualified immunity argument regarding Ms. Brown's state constitutional claims consists, yet again, of a single sentence: "Plaintiff can point to no Louisiana case that places 'beyond debate' the issue of whether the activities alleged in Paragraph 182 of the Second Amended Complaint violated her rights under Article I, Section 5 of the Louisiana Constitution." Dkt. 85-1, *13. Lawrence provides no additional legal analysis, nor does he identify any cases that *support* his position either.

With respect, there are many U.S. Supreme Court cases that place the issues beyond debate. These issues have been briefed *ad nauseum*, *see* Dkt. 52 (motion for preliminary

injunction); Dkt. 73 (reply in support of motion for preliminary injunction); Dkt. 87 (memorandum in opposition to MTD-City/Parish); Dkt. 88 (memorandum in opposition to MTD-Wallace). Lawrence does not respond to or distinguish any case cited in those briefs rejecting qualified immunity for strip-searches conducted based on reasonable suspicion. Nor does he identify any case in Louisiana history where a court remotely hinted that probable cause to arrest existed based on the possession of multiple prescription pills in a single container (when the possessor had a prescription on her phone). To be clear: **no such cases exist because it is a ludicrous proposition**.

### V.     Louisiana's "Discretionary Act Immunity" does not apply

Defendant's efforts to shield himself in "discretionary act immunity" pursuant to La. R.S. 9:2798.1 fall short, for two independent reasons: (1) Defendant was not engaged in "policymaking or discretionary acts" within the meaning of La. R.S. 9:2798.1(B) when he effectively kidnapped Ms. Brown and subjected her to a sexually humiliating strip-search, but was instead involved in misconduct at the operational level, and (2) the alleged misconduct consists of "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct," La. R.S. 9.2798.1(C). On the first point, the discretionary function immunity conferred by § 2798.1 only applies to policymaking or discretionary acts. *See Cloud v. Stone*, No. 18-1070, 2019 WL 238066, at *2 (W.D. La. Jan. 16, 2019) (citing *Poche v. Gautreaux*, 973 F. Supp. 2d 658, 674 (M.D. La. 2013). It does *not* protect against legal fault or negligent conduct at the operational level, only for policy decisions (i.e., decisions based on social, economic, or political concerns) at the policy-making or ministerial level. *Lockett v. City of New Orleans*, 639 F. Supp. 2d 710, 745 (E.D. La. 2009) (quoting *Saine v. City of Scott*, 2002-265 (La. App. 3 Cir. 6/12/02); 819

8

So. 2d 496), *aff'd*, 607 F.3d 992, (5th Cir. 2010); *see also Randle v. Tregre*, 147 F. Supp. 3d 581, 593 (E.D. La. 2015), *aff'd*, 670 F. App'x 285 (5th Cir. 2016). Thus, a "Defendants' reliance on La. R.S. § 9:2798.1 to support their argument that an officer's actions in handcuffing his or her suspect [too tightly] is protected [by discretionary act immunity] is misplaced." *Saine v. City of Scott*, 819 So. 2d 496, 500 (La. App. 3d Cir. 2002). The same is true when a plaintiff alleges that a police officer acted negligently in securing an accident scene, *Misuraca v. City of Kenner*, 802 So. 2d 784, 789 (La. App. 5th Cir. 2001) ("Kenner has not articulated any social, economic or political considerations surrounding the police officer's actions in handling the immediate investigation or securing the accident scene. Thus, Kenner is not immune from liability under La. R.S. 9:2798.1"); or alleges the officer mishandled a complaint regarding a stolen car, *Ducote v. City of Alexandria*, 677 So. 2d 1118, 1122 (La. App. 3d Cir. 1996) ("[T]he officer clearly was acting at the operational level. His decision . . . was not based on any balancing of social policy . . ."); or alleges the officer made an improper investigatory stop in violation of the Fourth Amendment, *Parker v. Town of Woodworth*, 160 So. 3d 1113, 1132 (La. App. 3d Cir. 2015), *writ denied*, 171 So. 3d 254 (La. 2015). The same is true here.

Independently, and more importantly, Defendant is not entitled to "discretionary act immunity" because the wrongdoing alleged in this complaint is conduct that is "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." The closest analogy is *Miller v. Village of Hornbeck*, 65 So. 3d 784, 788 (La. App. 3d Cir. 2011). There, Plaintiff alleged that he was improperly subject to a traffic stop, arrested without probable cause for "resisting arrest," had handcuffs tightly applied, and suffered other physical injuries. *Id.* at 786. He brought an excessive force claim and prevailed at trial.

9

The appellate court affirmed and explained that the record contained sufficient evidence to support the finding that La. R.S. 9:2798.1(C)(2) stripped the officers of immunity for the alleged wrongdoing. *Id.* at 788. As repeatedly explained in this case, the wrongdoing at issue in this case is not simply "police misconduct," but rather, it is more akin to battery, false imprisonment, and sexual assault (or, perhaps, a conspiracy against rights, 18 U.S.C. § 241). Discretionary act immunity was not intended to, and does not, cover such conduct.

                Respectfully submitted,

                /s/ Thomas Frampton

                **Thomas Frampton, LA Bar # 35775**
                580 Massie Road
                Charlottesville, VA 22903
                T: (202) 352-8341
                E: tframpton@law.virginia.edu