## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JEREMY LEE                                              CIVIL ACTION

VERSUS                                                  23-1229-SDD-RLB

TROY LAWRENCE, JR., et al.

consolidated, for limited purposes, with

TERNELL L. BROWN                                        CIVIL ACTION

VERSUS                                                  23-1313-JWD-EWD

BATON ROUGE POLICE
DEPARTMENT, et al.

## <u>RULING</u>

This matter is before the Court on the Motion for Preliminary Injunction filed in *Lee v. Lawrence Jr, et al*., Case No. 23-cv-01229-SDD-SDJ,[1] by Plaintiff, Jeremy Lee, and the Motion for Preliminary Injunction filed in *Brown v. Lawrence Jr., et al.*, Case No. 23-cv-1313-JWD-EWD,[2] filed by Plaintiff, Ternell L. Brown.  The Defendants in the respective cases have filed Oppositions[3] to the motions. Plaintiff Lee filed a Motion to Consolidate[4] these matters for the limited purpose of reaching a determination of the constitutionality of a portion of the Baton Rouge Police Department's ("BRPD") strip search policy. The

---

[1] Rec. Doc. 76.
[2] Rec. Doc. 52 in 23-cv-1313-JWD-EWD.
[3] Rec. Doc. 85 and Rec. Doc. 64 in 23-cv-1313-JWD-EWD.
[4] Rec. Doc. 77.

Court held Oral Argument and received limited evidence on these motions on June 25, 2024. After carefully considering the parties' arguments, the evidence admitted, the facts of the cases, and applicable law, the Court finds that Plaintiffs' Motions for Preliminary Injunction should be granted.

The issue before the Court on these motions is whether the BRPD's strip search policy regarding non-arrestees is constitutional. This policy, General Order No. 281, allows police officers to conduct strip searches based on an "individualized articulable reasonable suspicion" standard; it does not require probable cause to strip search. Because the United States Supreme Court has plainly held that probable cause is required to go beyond a frisk or pat-down of a citizen during an investigatory stop, the Court finds that General Order No. 281, Section III.C is unconstitutional on its face and must be enjoined. This holding does not apply to any other provisions in General Order No. 281.

## I.    BACKGROUND[5]

The *Lee* case is one of multiple cases pending in this Court involving actions allegedly taken by Baton Rouge Police Department ("BRPD") officers against citizens at a warehouse that was utilized by the BRPD Street Crimes Unit, referred to as the "BRAVE Cave." Plaintiff Lee filed his Complaint on August 29, 2023, with claims of excessive force and unreasonable search and seizure in violation of the Fourth Amendment, retaliation in violation of the First Amendment, assault, battery, and false imprisonment, along with several other claims against the various Defendants.[6] Shortly after the Defendants filed

---

[5] For ease of reference and for purposes of this Ruling, the Court will refer to Jeremy Lee as the Plaintiff and to the briefing submitted in Middle District of Louisiana, Civil Action Number 23-1229-SDD-RLB.
[6] Rec. Doc. 1, pp. 21-27.

their Answer in this matter, Plaintiff moved for a preliminary injunction, asking the Court to enjoin the current BRPD strip search policy, which Plaintiff contends is unconstitutional on its face.

Plaintiff also moves to consolidate this motion, pursuant to Federal Rule of Civil Procedure 42(a), and the preliminary injunction ruling in this case (*Lee v. Lawrence Jr, et al.*, Case No. 23-cv-01229-SDD-SDJ) with the same motion filed in *Brown v. Lawrence Jr., et al.*, Case No. 23-cv-1313-JWD-EWD, arguing the motions involve the identical issue – constitutional challenge to BRPD's strip search policy – and seek identical relief.

Defendants object to consolidation, arguing the relevant factors do not support consolidation with *Brown*; rather, if any consolidation should occur, this case should be consolidated with *Deondrick Lucas, et al. v. Troy Lawrence, Jr. et al.*; Docket No.: 24-00013-BAJ-EWD, a case currently pending before Judge Jackson but stayed pending the outcome of the criminal case there. Defendants further claim Plaintiff lacks standing to seek the requested injunctive relief.   Defendants substantively object to Plaintiff's preliminary injunction motion, arguing that the law clearly allows officers to strip search pre-trial detainees for their own safety and, alternatively, a full evidentiary hearing is required to establish that BRPD officers are appropriately applying the strip search policy.

## II.    THE CHALLENGED WRITTEN POLICY

It is undisputed that the challenged policy is found in BRPD General Order No. 281, which provides, in pertinent part:

> III.    Strip Search
>                             ***
> C.  Strip searches may be conducted on non-arrestees based on individualized articulable reasonable suspicion to frisk, probable cause to search, consent, or a court order.

1.  Reasonable suspicion and probable cause will be based upon the same factors listed in III A.[7]

## III.    NATURE OF THE CHALLENGE – FACIAL v. AS-APPLIED

Before addressing consolidation, the primary nature of the relief sought in Plaintiff's motion should be determined as it affects consideration of the consolidation factors discussed below.  Plaintiff does not overtly state a facial challenge to the constitutionality of the above portion of the BRPD strip search policy in either his Amended Complaint or his Motion for Preliminary Injunction. However, Plaintiff pleads in his Amended Complaint that "[t]he constitutional rights of the citizens of Baton Rouge continue to be put at risk as a result of this written policy."[8] In support of the pending motion, Plaintiff argues that "[t]he 'reasonable suspicion' standard used by BRPD, and apparently employed by officers against Mr. Lee, runs afoul of the Supreme Court's established directives."[9]  Essentially, Plaintiff contends reasonable suspicion can never justify the strip search of a non-arrestee.  Plaintiff further claims that:

> The substantive law of strip searches proves that BRPD's policy, which is still in force today, is patently unconstitutional. "Time and again, [the Supreme] Court has observed that searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (cleaned up).[10]
>
> ***
>
> BRPD General Order No. 281 instructs officers, in no uncertain terms, that "strip searches may be conducted on non-arrestees based on individualized articulable [sic] reasonable suspicion to frisk[.]" This is directly contrary to

---

[7] Rec. Doc. 65, p. 26. The four factors are: (1) the nature of the offense charged; (2) the arrestee's appearance and conduct; (3) the circumstances of the arrest; and (4) the arrestee's prior record.  *Id.*
[8] Rec. Doc. 65, ¶ 204.
[9] Rec. Doc. 76-1, pp. 1-2.
[10] *Id.* at p. 7.

Terry's "narrow" holding and the Fifth Circuit's caselaw requiring probable cause for a search. *Ybarra*, 444 U.S. at 94; *Williams*, 352 F.3d at 1004.[11]

The Defendants' arguments in opposition to this motion, both in briefing and at oral argument, make clear that they see only an as-applied challenge to the strip search policy. Specifically, Defendants request an evidentiary hearing on Plaintiff's motion "replete with witness testimony and documentary exhibits …"[12]  In briefing, Defendants do not specifically respond to the argument that the policy itself is unconstitutional, focusing primarily on the individual facts of each strip search mentioned.  Defendants argue against injunctive relief, in part, because "Plaintiff's allegations and argument encompass incorrect and incomplete details of the traffic stop."[13]

However, in the Court's view, the question is not whether the specific facts of Plaintiff's *Terry* stop justified his strip search but whether such a strip search could ever be justified under the reasonable suspicion standard in the BRPD policy for a suspect/non-arrestee.  Defendants concede that BRPD applied the reasonable suspicion standard to Plaintiff's strip search, stating that, in this case, "officers established individualized, reasonable suspicion that Plaintiff may have concealed a weapon, and may have also concealed additional contraband on his person beyond the weapons and contraband discovered at the location of his arrest."[14]  The question is whether reasonable suspicion would ever allow the strip search of a non-arrestee under the circumstances.

The Court interprets Plaintiff's challenge to the BRPD's written strip search policy in the pending motion as primarily a facial challenge rather than an as-applied challenge,

---

[11] *Id.* at p. 9.
[12] Rec. Doc. 85, p. 3.
[13] *Id.* at p. 8.
[14] *Id.* at p. 9.

although from Plaintiff's pleadings, it appears he asserts both facial and as-applied challenges to the policy.   The distinction between these challenges was recently explained by another section of this Court:

> "The distinction between as applied and facial challenges is sometimes hazy." *United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022) (citation omitted). Generally, however, in an as applied challenge, the Court assesses whether a law with some permissible uses "is nonetheless unconstitutional as applied to [the defendant's] activity." *Spence v. Washington*, 418 U.S. 405, 414, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (reversing defendant's criminal conviction); *see Street v. New York*, 394 U.S. 576, 594, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969) (same). By contrast, in a facial challenge, the Court looks more broadly, assessing whether a law "could never be applied in a valid manner." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).[15]

Further, in *City of Los Angeles v. Patel*, the United States Supreme Court held that "facial challenges under the Fourth Amendment are not categorically barred or especially disfavored."[16]  The Court listed several cases wherein it had entertained facial challenges under the Fourth Amendment to statutes authorizing warrantless searches.[17] The Court further noted several instances in which it had declared statutes facially invalid under the Fourth Amendment.[18]  The Court also clarified prior decisions, explaining that "under the unconstitutional-in-all-of-its-applications analysis, a court must 'consider[ ] only applications of the [challenged] statute in which it actually authorizes or prohibits conduct.'"[19]

While Plaintiff plainly contends the officers lacked the constitutional authority to strip search him on the night in question, the overarching claim in this motion appears to

---

[15] *United States v. LeBlanc*, -FSupp3d-, 2023 WL 8756694, *2 (M.D. La. Dec. 19, 2023).
[16] *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 415 (2015).
[17] *Id*. at 416.
[18] *Id*. at 416–17.
[19] *Id*. at 418.

the Court to be that, as a non-arrestee, the strip search policy employed against him –
and any others similarly situated – could never be constitutional as a matter of law. A
facial challenge to the constitutionality of a statute requires the challenge to "establish
that no set of circumstances exists under which the Act would be valid."[20]  This is how
Plaintiff argues his motion.

Where both challenges are raised, courts ordinarily address the as-applied
challenge first.[21]  However, once a case is brought, there is no categorical bar that
prevents a court from making a broader pronouncement of invalidity in proper "as-applied"
cases.[22]  Accordingly, the Court will evaluate the facial challenge to the BRPD strip search
policy for non-arrestees.

## IV.    CONSOLIDATION

### A.  Legal Standard

Where two actions before the court involve a common question of law or fact, the
court may consolidate the actions;[23] consolidation is always discretionary.[24] Further,
consolidation "does not cause one civil action to emerge from two; the actions do not lose
their separate identity."[25] Rather, consolidation "is permitted as a matter of convenience
and economy in administration."[26] However, consolidation "may be properly denied in
instances where the cases are at different stages of preparedness for trial."[27]

---

[20] *United States v. Salerno*, 481 U.S. 739, 745 (1987).

[21] *See Serafine v. Branaman*, 810 F.3d 354, 362 (5th Cir. 2016) (quoting *Bd. of Trustees. v. Fox*, 492 U.S.
469, 485 (1989)).

[22] *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010) (citing Fallon, 113 HARV. L. REV. at
1339).

[23] Fed. R. Civ. P. 42(a)(2).

[24] *Varnado v. Leblanc*, No. 3:13-00348-JWD-EWD, 2016 WL 320146, at *2 (M.D. La. Jan. 25, 2016).

[25] *McKenzie v. United States*, 678 F.2d 571, 574 (5th Cir. 1982).

[26] *Johnson v. Manhattan Ry. Co.*, 2389 U.S. 479, 497 (1933).

[27] *Varnado*, 2016 WL 320146, at *2.

Factors relevant to the determination of consolidation include: 1) whether the actions are pending in the same court, 2) the common identity of the parties, 3) the existence of common questions or law or fact, 4) the risk of confusion or prejudice that may result from consolidation, and 5) the extent to which consolidation would promote juridical efficiency.[28]

### B. Parties' Arguments

Plaintiff's facial challenge becomes more apparent in his argument for consolidation where he contends both motions "seek[] to halt BRPD's unconstitutional 'stop and strip' policy."[29]  Plaintiff claims that the motion for preliminary injunction filed in this matter is "substantially similar" to the one filed in the *Brown* case pending before Judge deGravelles, and Plaintiffs' counsel is the same in both cases. Further, "[g]iven the substantial overlap of issues between both motions, concerns of judicial economy, the need for legal consistency, and the pressing nature of the claims, Plaintiff believes joining these cases, strictly for purposes of the motions for preliminary injunction, is proper."[30]

Defendants object to consolidation of these motions, arguing that, aside from factor one, the remaining factors weigh heavily against consolidating this motion with the one filed in *Brown.* According to Defendants, the following circumstances weigh against consolidation in the manner Plaintiff requests: 1) the plaintiffs are not the same, only some of the defendants are common parties, the plaintiffs have different factual predicates for the requested relief, and the effect is not only as to the City/Parish; 2) questions of law and fact are mixed and are different in quantity and substance (i.e., ten claims in *Brown*

---

[28] *Id.* (citing *Arnold & Co., LLC v. David K. Young Consulting, LLC*, No. SA-13-CV-00146-DAE, 2013 U.S. Dist. LEXIS 50103, at *4, 2013 WL 1411773, at *1–2 (W.D. Tex. Apr. 8, 2013)).

[29] Rec. Doc. 89, p. 1.

[30] Rec. Doc. 77-1, ¶ 5.

and fourteen claims in *Lee* – claims for excessive force, malicious prosecution, first Amendment retaliation, and failure to intervene, are not common across the two suits); and 3) there is a risk of inconsistent adjudications because the underlying criminal matters in the cases are not yet resolved.[31]  Again, Defendants' arguments against consolidation are based only on as-applied challenges among the related cases, which would admittedly require an independent evaluation of the facts of each plaintiffs' stop and search.

### C. Application

Clearly, the consolidation factors weigh differently whether the Court is considering a facial challenge to the BRPD strip search policy or an as-applied challenge to the policy. Because the Court has narrowed the nature of the claim in the pending motion to a facial challenge, the Court finds that consolidation of this motion with the identical motion in the *Brown* case pending before Judge deGravelles is appropriate.  The Court has consulted with Judge deGravelles, and he agrees that consolidation is proper under the circumstances.

First, the actions are pending in different sections of the same court.  Second, while there is not common identity of the Plaintiffs, there is common identity in the pertinent municipal defendants – the City of Baton Rouge/Parish of East Baton Rouge and the Sheriff of the Baton Rouge Police Department. Third, the common question of law that predominates in the preliminary injunction motions is whether the BRPD strip search policy pertaining to non-arrestees is constitutional on its face.  Fourth, the Court finds that, because the primary issue is a narrow one irrespective of the individual facts alleged to

---

[31] Rec. Doc. 85, pp. 4-5.

support the other claims raised in these lawsuits, there is little risk of confusion or prejudice to any party if one court resolves this question of law. And fifth, the Court finds that consolidation of these motions promotes judicial efficiency as it would be a waste of judicial resources for two different judges to rule on the exact same question of law in these closely related cases.

## V.  STANDING

The Fifth Circuit has explained the standard for standing to seek injunctive relief:

> Standing to seek injunctive relief requires plaintiffs to show that they suffer or will suffer an injury-in-fact, and therefore would benefit from the court's granting of such equitable relief. *Id*. Plaintiffs must demonstrate that they face a palpable present or future harm, not harm that is "conjectural or hypothetical." *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 n. 23 (5th Cir.1998) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Allegations of "past wrongs" alone do not "amount to that real and immediate threat of injury necessary to make out a case or controversy." *Id*. at 563 (quoting *Lyons*, 461 U.S. at 103, 103 S.Ct. 1660) (alteration omitted). Past wrongs can be considered, however, as evidence of an actual threat of repeated injury. *Henschen v. City of Houston*, 959 F.2d 584, 588 (5th Cir.1992) (citing *O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).[32]

Defendants challenge Plaintiff's standing to assert the facial challenge at issue, arguing that he is unable "to establish that he will again commit the two-part violation of law as done here,"[33] and thus, he is unable to satisfy the *Lyons* standard. Defendant argues: "There can be no immediate risk or danger to Plaintiff of purportedly being subjected to another strip search as long as he does not perform a similar chain of events that initiate police interaction and trigger reasonable suspicion of concealment of contraband at or around the area of surveilled criminal activity."[34]

---

[32] *Perez v. Doctor's Hosp. at Renaissance, Ltd.*, 624 Fed.Appx. 180, 183 (5th Cir. 2015).
[33] Rec. Doc. 85, p. 8.
[34] *Id.* at p. 9.

Plaintiff responds, referring to Defendants' standing argument as a "red herring."[35] Plaintiff contends the Defendants ignored the case law Plaintiff cited in support of standing and reiterates counsel's argument in the *Brown* case relating to standing:

> The City-Parish incorrectly argues that [Plaintiff] will not be subject to "stop and strip" if she refrains from "perform[ing] a similar chain of criminal acts" in the future. Dkt. 64, *4. But a Baton Rouge citizen need not engage in *any* criminal activity to be subject to "stop and strip." As the City-Parish's own expert testified, "there could be reasonable suspicion for somebody to be frisked" (and hence strip-searched) "even if they haven't broken the law"; "there could be reasonable suspicion to frisk someone" (and hence strip-search them) "even if there's not probable cause to believe that they have broken the law." Ex. A, at 116:13-116:24. Rather than respond to cases cited by [Plaintiff] like *Spector* and *Hernandez*, see Dkt. 52-1, *9-*10, the City-Parish pretends that the proposed injunction (like in *Lyons*) involves a policy that applies only to *arrestees* and involves officers engaged in *unauthorized* brutality (rather than to *non-arrestees* and officers following *formal policy*). *See also Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020).
>
> "Reasonable suspicion" is a low bar, one that can be met while a citizen engages in conduct that is lawful and protected by the Constitution: "[n]ervousness or suspicious actions upon the approach of police officers, combined with an individual's presence in a high-crime area" alone suffices. *State v. Martin*, 738 So. 2d 98, 102 (La. App. 5th Cir. 1999). . . . And, of course, [Plaintiff] sometimes carries multiple types of lawful prescription pills on her person, which BRPD officers believe is a valid basis for her arrest. *See* Dkt. 69. In short, without doing anything wrong, [Plaintiff] faces a high risk of being subject to General Order No. 281 again in the future.[36]

Here, Plaintiff distinguishes his position to that of the plaintiff in *Lyons*, stating that "there is a substantial threat that [Plaintiff] would be subject to other unconstitutional strip searches" because, "[n]otwithstanding the evidence of numerous other illegal strip searches alleged by Plaintiff, the policy at force behind these violations is still in effect.

---

[35] Rec. Doc. 89, p. 1.
[36] *Id.* at p. 2 (quoting *Brown v. BRPD*, No. 23-cv-1313 (M.D. La.), Rec. Doc. 73).

Further, the situations where [Plaintiff] could find himself subject to a mere 'reasonable suspicion' standard for a strip search are commonplace."[37]  Plaintiff contends courts have set forth "two ways in which a plaintiff can distinguish *Lyons* and properly establish standing for injunctive relief."[38]  According to the Ninth Circuit, "a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury stems from that policy.  Second, the plaintiff may demonstrate that the harm is part of a pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights."[39]  Moreover, Plaintiff contends his actions on the night he was stripped search constituted entirely lawful conduct.[40]

Although the Ninth Circuit's test is not binding on the Court, the reasoning is sound. Further, as mentioned above, the Fifth Circuit holds that past wrongs can be considered as evidence of an actual threat of repeated injury.[41]  And, in a facial attack, allegations in the complaint are taken as true.[42] Plaintiff's Amended Complaint is replete with allegations that this policy has been wrongfully applied in numerous incidents and that Defendants were aware of the policy and the need for changes, yet the policy remains the same.[43] Because Defendants conceded both in briefing and at the hearing that Plaintiff Lee was strip searched based on a reasonable suspicion standard, and this standard still applies

---

[37] Rec. Doc. 76-1, p. 10.
[38] *Id.* at p. 11 (quoting *Sims v. City of Seattle*, No. 2:22-CV-00483-TL, 2023 WL 3619019, at *4 (W.D. Wash. May 24, 2023))(internal quotation marks omitted).
[39] *Id.* (quoting *Sims v. City of Seattle*, 2023 WL 3619019, at *4 (citing *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012))(internal quotation marks omitted).
[40] *Id.*
[41] *Henschen v. City of Houston*, 959 F.2d 584, 588 (5th Cir.1992) (citing *O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).
[42] *In re Blue Water Endeavors, LLC*, Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, at *3 (Bankr. E.D. Tex. Jan. 6, 2011) (citing *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995)).
[43] Rec. Doc. 65.

to any citizen in Baton Rouge that is the subject of an investigatory stop, the Court finds that there remains an actual threat of repeated injury.

Accordingly, the Court finds that Plaintiff has standing to challenge the facial validity of the BRPD's strip search policy as it pertains to non-arrestees. Based on the policy as written, the Court finds that there is a substantial threat that officers may use only a reasonable suspicion standard to strip search not just Plaintiff but other citizens of Baton Rouge.  Further, the Court finds that the alleged injury stems from the language of the written policy, *i.e.* is directly traceable to the conduct and policy of Defendants, and the Plaintiff has presented claims that, if proven, would demonstrate a pattern of the same kind of harm.

## VI.    PRELIMINARY INJUNCTION STANDARD AND ELEMENTS

A preliminary injunction is an "extraordinary and drastic remedy" that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.[44]   A plaintiff seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that their substantial injury outweighs the threatened harm to the party whom they seek to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest.[45]

The decision to grant or deny a preliminary injunction is discretionary with the district court.[46] However, because a preliminary injunction is an extraordinary remedy, it "should not be granted unless the party seeking it has clearly carried the burden of

---

[44] *Munaf v. Geren*, 553 U.S. 674, 689, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008).
[45] *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012); *accord Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).
[46] *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

persuasion on all four requirements."[47]  Consequently, the decision to grant a preliminary injunction "is the exception rather than the rule."[48]

### A.    Irreparable Harm

In nearly all motions for emergency injunctive relief, the war is won or lost on whether irreparable harm has been demonstrated by credible, admissible evidence and/or as a matter of law. Wright & Miller instructs: "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered."[49]

However, speculative harm is insufficient to clear the high bar for obtaining a preliminary injunction.  "Injunctions are forward-looking remedies that may issue 'only if *future* injury is "certainly impending."'"[50] "[S]peculation built upon further speculation does not amount to a 'reasonably certain threat of imminent harm'" and does not warrant injunctive relief.[51] "[B]ecause 'the court must decide whether the harm will in fact occur,' a party seeking injunctive relief must 'substantiate the claim of irreparable injury' and 'must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."[52]

---

[47] *Suehs*, 692 F.3d at 348.
[48] *Miss. Power & Light Co.*, 760 F.2d at 621.
[49] 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed. 2013).
[50] *Sierra Club v US Army Corps of Engineers*, 482 F.Supp.3d 543, 556-557 (W.D. Tex. 2020)(quoting *Aransas Project v. Shaw*, 775 F.3d 641, 664 (5th Cir. 2014) (emphasis added)).
[51] *Friends of Lydia Ann Channel v. United States Army Corps of Engineers*, 701 F. App'x 352, 357 (5th Cir. 2017) (quoting *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir. 1991)).
[52] *Sierra Club v. United States Army Corps of Engineers*, 990 F. Supp. 2d 9, 39 (D.D.C. 2013) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

There is a wealth of Fifth Circuit jurisprudence holding that, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."[53]  This is certainly true when the allegations are that the constitutional violations involve First Amendment free speech, the right to vote, and the right to privacy.[54]  Considering the nature of the injury – violation of the Fourth Amendment and the invasion of bodily privacy – the Court finds that Plaintiff has demonstrated irreparable harm.

### B.    Substantial Likelihood of Success on the Merits

The Fourth Amendment guarantees that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated...." A person may claim "the protection of the Fourth Amendment" if he "has a legitimate expectation of privacy in the invaded place."[55] Without question, a person has a legitimate expectation of privacy in his or her body.  As the Seventh Circuit puts it, "[t]he privacy interest in one's body is clearly a heightened and fundamental one."[56]

Defendants maintain Plaintiff cannot demonstrate a likelihood of success on the merits because its strip search policy is in line with the Supreme Court's decision in *Bell v. Wolfish*.[57]  In *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*,[58] the Supreme Court explained how the *Bell* decision applies to Fourth Amendment challenges.

---

[53] *Book People, Incorporated v. Wong*, 91 F.4th 318, 340 (5th Cir. 2024)(quoting *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012)(quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995))(internal quotation marks omitted).

[54] *See Lambert v. Bd. of Comm'rs of Orleans Levee Dist.*, No. 05-5931, 2006 WL 8456316, at *7 (E.D. La. Mar. 22, 2006).

[55] *Rakas v. Illinois*, 439 U.S. 128, 143 (1998) (citations omitted).

[56] *Henry v. Hulett*, 969 F.3d 769, 778 (7th Cir. 2020).

[57] 441 U.S. 520 (1979).

[58] 566 U.S. 318 (2012).

> The Court's opinion in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), is the starting point for understanding how this framework applies to Fourth Amendment challenges. That case addressed a rule requiring **pretrial detainees in any correctional facility** run by the Federal Bureau of Prisons "to expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution." *Id.*, at 558, 99 S.Ct. 1861. Inmates at the federal Metropolitan Correctional Center in New York City argued there was no security justification for these searches. Officers searched guests before they entered the visiting room, and the inmates were under constant surveillance during the visit. *Id.*, at 577–578, 99 S.Ct. 1861 (Marshall, J., dissenting). There had been but one instance in which an inmate attempted to sneak contraband back into the facility. *See id.*, at 559, 99 S.Ct. 1861 (majority opinion). The Court nonetheless upheld the search policy. It deferred to the judgment of correctional officials that the inspections served not only to discover but also to deter the smuggling of weapons, drugs, and other prohibited items inside. *Id.*, at 558, 99 S.Ct. 1861. The Court explained that there is no mechanical way to determine whether **intrusions on an inmate's privacy** are reasonable. *Id.*, at 559, 99 S.Ct. 1861. The need for a particular search must be balanced against the resulting invasion of personal rights. *Ibid.*[59]

Defendants maintain that Plaintiff was an arrestee at the time of his strip search, stating that it is "illogical" to claim he was not.[60]

Plaintiff points out that all cases upon which Defendants rely involve arrestees and/or pretrial detainees confined to a prison or jail. Further, Plaintiff takes issue with Defendants' characterization that he was arrested during his strip searches, claiming that he was strip-searched twice in this matter - once at the scene of his detention and again inside "the BRAVE Cave." While the Defendants "hint" that Plaintiff was an arrestee at the time he was "kidnapped and taken to the BRAVE Cave, it pointedly does not argue that he was an 'arrestee' at the time of the first strip search."[61]

---

[59] *Id.* at 326-327 (emphasis added).
[60] Rec. Doc. 85, p.11.
[61] Rec. Doc. 89, p. 3.

The Court turns to a consideration of applicable jurisprudence regarding the constitutionality of strip searches during investigatory stops.  This inquiry begins, of course, with *Terry v. Ohio*.[62] "To justify a patdown of the driver or a passenger during a traffic stop, ... the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous."[63] A "patdown" of a passenger in a vehicle legitimately stopped is governed by the same "stop and frisk" rules developed under *Terry* and its progeny.[64] Even when a police officer has reasonable suspicion that a passenger is armed and dangerous, "a protective search—permitted without a warrant and on the basis of reasonable suspicion less than probable cause—must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'"[65]  However, an officer "overstep[s] the bounds of the 'strictly circumscribed' search for weapons allowed under *Terry*" by "continued exploration" of the suspect's clothing "after having concluded that it contained no weapon."[66] This includes "squeezing, sliding and otherwise manipulating the contents of [the subject's clothing]" after it is clear they are not carrying a weapon.[67]

---

[62] *Terry v. Ohio*, 392 U.S. 1 (1968).

[63] *Arizona v. Johnson*, 555 U.S. 323, 327 (2009); *see also Ybarra v. Illinois*, 444 U.S. 85, 92–93 (1979) (describing "reasonable belief that [the subject of a frisk] was armed and presently dangerous," as "a belief which this Court has invariably held must form the predicate to a patdown of a person for weapons").

[64] *Johnson*, 555 U.S. at 327.

[65] *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (quoting *Terry*, 392 U.S. at 26); *see also Adams v. Williams*, 407 U.S. 143, 146 (1972) (emphasizing that the purpose of a frisk "is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence"); *Sibron v. New York*, 392 U.S. 40, 64–65 (1968) (finding a frisk unconstitutional where the officer "made it abundantly clear that he sought narcotics" in the defendant's pockets rather than conducting "a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault").

[66] *Dickerson*, 508 U.S. at 378.

[67] *Id*. (quoting *State v. Dickerson*, 481 N.W.2d 840, 844 (Minn. 1992)).

"**To conduct more than a frisk of a person's outer clothing for weapons, the searching officer must have a warrant and probable cause**."[68] In evaluating the Fourth Amendment warrant requirement, the Supreme Court has held that "[t]he importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great."[69] Moreover, "absent an emergency," a search warrant is always required "where intrusions into the human body are concerned."[70] Additionally, "while a search unequivocally requires probable cause and a warrant, the reasonableness of a search must be closely scrutinized where the search implicates 'the individual's dignitary interests in personal privacy and bodily integrity.'"[71]

The district court for the Eastern District of Louisiana considered this issue on a summary judgment motion in *Sims v. City of New Orleans*.[72]   In *Sims*, police officers executed a search warrant for a residence; the warrant authorized the search specifically for certain property – two ballistic body armor vests, a rifle, a shotgun, two license plates, a tactical holster and a stinger flashlight.[73] During the execution of this search warrant, three females – two adult women and a one-year-old minor child - were initially detained in the living room; later, the two adult women were taken individually into private rooms where officers "inspected each woman's breasts … ordered each to remove her clothing, bend over and spread her buttocks open so that the officer could perform a visual

---

[68] *Haliburton v. City of Ferndale*, 653 F.Supp.3d 377, 390 (E.D. Mich. 2023)(citing *Ybarra*, 444 U.S. at 96)(emphasis added).
[69] *Schmerber v. California*, 384 U.S. 757, 770 (1966).
[70] *Id.*
[71] *Haliburton*, 653 F.Supp.3d at 390 (quoting *Winston v. Lee*, 470 U.S. 753, 761, 767 (1985).
[72] No. Civ. A.03-3169, 2005 WL 1400440 (E.D. La. June 6, 2005).
[73] *Id.* at *1.

inspection of the vaginal area."[74]  The plaintiffs also alleged that the police officers ordered one woman to remove the infant's diaper, and "a female officer then visually inspected the infant's buttocks and vaginal areas."[75]  The plaintiffs claimed the officer performed these strip searches "without their consent and solely for the purpose of humiliating them."[76]

The defendants moved for summary judgment, arguing that "there existed a reasonable suspicion or probable cause for each of these searches," and ostensibly, that "exigent circumstances existed at the time of the strip searches" because "the search warrant was considered high-risk given the type of stolen property the officers were searching for (including assault weapons)."[77]  The court noted, however, that none of the women were named as suspects in the application for the search warrant.[78]

The court denied the defendants' motion for summary judgment on these claims, finding that the defendants had failed to demonstrate that no genuinely disputed facts were present.[79]  In so doing, the court relied upon the applicable Fifth Circuit jurisprudence governing strip searches.

> In *Stewart*, the Fifth Circuit employed the test articulated by the Supreme Court in *Bell*, balancing law enforcement interests in the search against the level of invasion of personal rights caused by the search, and concluded that the strip search policy at issue there violated the Fourth Amendment because it applied to *minor offenders* about whom the police had no reasonable suspicion of possessing weapons or contraband. *See Stewart*, 767 F.2d at 156-57. Similarly, in *Watt*, the Fifth Circuit recognized that even though strip searches of inmates were often allowed to maintain institutional security, when an arrestee's offense is minor, his criminal history innocuous

---

[74] *Id.* at *2.
[75] *Id.*
[76] *Id.*
[77] *Id.* at *12.
[78] *Id.* at *13.
[79] *Id.* at *12.

or ancient, and his personal characteristics at odds with reasonable fears about prison security, the strip search is illegal. *See Watt*, 849 F.2d at 197, 199. Looking at those two prior decisions, the Fifth Circuit in *Williams* distinguished the circumstances before it, as the search in *Williams*-like here-**concerned individuals outside the prison context toward whom the police had even less individualized reasonable suspicion or probable cause.** 352 F.3d at 1006[.] In short, the Fifth Circuit stated that *Stewart* and *Watt* provided fair warning to the defendant that law enforcement interests in safety did not justify the extreme intrusiveness of strip searches which occurred there. *Id.* at 1007.

Likewise, having considered the *Ybarra*, *Stewart* and *Watt* decisions (rendered in 1979, 1985 and 1988, respectively), this Court concludes that the **law was clearly established that strip searching individuals, about whom the police had <u>no individualized probable cause</u> of weapon or contraband possession, was unlawful.**[80]

Two things are noteworthy in the *Sims* opinion.  First, the court distinguished the strip search standard applicable to inmates in a jail or prison facility from the standard applicable to "individuals outside of the prison context."  Second, the court concluded that, under Supreme Court and Fifth Circuit jurisprudence, strip searching individuals "about whom the police had no individualized probable cause of a weapon or contraband possession, was unlawful."[81]  Thus, outside the prison context, it is well-established that police officers need probable cause to strip search a private citizen during an investigatory stop – not just reasonable suspicion.

The Court also finds guidance from an older case decided by the district court for the Western District of Louisiana back in 1985.  In *Ringe v. Romero*,[82] the patrons of a bar who had been subjected to a warrantless search filed suit seeking a declaration that

---

[80] *Id.* at *14 (emphasis added).
[81] *Id.* at *14.
[82] 624 F.Supp. 417 (W.D. La. 1985).

the statute and ordinance authorizing warrantless searches of bar patrons for weapons were facially unconstitutional. In *Ringe*, the court evaluated the constitutionality of a provision in now-repealed Louisiana Revised Statutes 14:95.4 and Lafayette City Ordinance §§ 10-74 through 10-74.6.[83] The statute and ordinance provided that any person entering a place where alcoholic beverages were sold, by the mere fact of entering, consents to the search of his person for firearms or other contraband.[84] The intrusions in *Ringe* included a female being told to stand against the wall, an officer forcing her legs apart, and unfastening and shaking the woman's bra as part of a "pat-down."[85]

The court found that these regulations significantly trampled a person's Fourth Amendment rights because they **circumvented the probable cause requirement necessary for government actors to conduct warrantless searches for firearms.**[86] According to the court, entry to any place where alcoholic beverages are sold did not warrant such an intrusion because those circumstances did not fit into one of the limited exceptions for warrantless intrusions as recognized by the Supreme Court, *e.g.*, airport and courthouse exceptions or the "stop-and-frisk" exception. Additionally, the court noted that the breadth of the state laws undermined a person's legitimate expectation of privacy recognized at common law.[87]

Of importance here, the defendants in *Ringe* argued that the searches in question were proper because they were conducted indiscriminately upon all the bar's patrons.[88] However, the court was critical of that argument, finding that it went to "whether this

---

[83] *Id.* at 418-19.
[84] *Id.* at 418.
[85] *Id.* at 417.
[86] *Id.* at 418.
[87] *Id.* at 419.
[88] *Id.* at 421.

statute and ordinance are unconstitutional as applied, as opposed to facially."[89]  The court continued:

> The Supreme Court has recognized a "pat-down," or frisk, as a "severe ... annoying, frightening, and perhaps humiliating [intrusion]...." *Terry*, 392 U.S. at 24–25, 88 S.Ct. at 1881–1882. Because a pat-down is the standard police method of searching for weapons, the statute and ordinance in question clearly authorize on their faces at least that severe a level of intrusion.[90]

The court contrasted the statute/ordinance at issue with those allowing for a frisk – "an absolutely minimal invasion of privacy" – stating "the laws in the instant case authorize 'searches,' be they pat-downs, body cavity, or merely magnetometer, in the absence of any particularized level of suspicion. Such intrusiveness clearly goes beyond that authorized by the airport and courthouse exceptions."[91]

Based on the foregoing jurisprudence, the Court is unpersuaded that anything less than probable cause is sufficient to justify a strip search of a non-arrestee.

 Turning back to the language of the BRPD policy challenged here, the Court is also concerned about the confusing inferences that may be drawn from the language. While the policy pertaining to non-arrestees may suggest that officers know that probable cause is required to search based on the language "Strip searches may be conducted on non-arrestees based on individualized **articulable reasonable suspicion to frisk, probable cause to search**, **consent, or a court order**" the policy still states that "strip searches" may be conducted based on reasonable suspicion.  Further, even if the policy appropriately makes the distinction between the standards to be applied, the policy

---

[89] *Id.*
[90] *Id.*
[91] *Id.* (citing *Wheaton v. Hagan*, 435 F.Supp. 1134, 1146 (M.D.N.C.1977); *Collier v. Miller*, 414 F.Supp. at 1365).

merges reasonable suspicion with probable cause, stating "[r]easonable suspicion and probable cause will be based on the same factors."

Although, "[s]imilar to reasonable suspicion, '[p]robable cause is determined by examining the totality of the circumstances,'"[92] the law makes clear that "[p]robable cause is a more demanding standard than reasonable suspicion."[93]  And many courts have determined that reasonable suspicion was present under the circumstances where probable cause was not,[94] demonstrating that these terms are not interchangeable  or based solely on the same factors. Indeed, the Fifth Circuit instructs that "[a]lthough 'reasonable suspicion' is more than a 'mere hunch,' it 'need not rise to the level of probable cause.'"[95]

The Court's concerns were not assuaged by the testimony and argument presented at the June 25 hearing.  Chief of Police for the Baton Rouge Police Department, Thomas Morse, Jr., admitted under oath that General Order 281 allows officers to conduct a strip search based on "articulable reasonable suspicion."  He further testified that, while many proposed changes to this policy are before him for consideration, none of the proposed changes address reasonable suspicion to strip search.  He testified that an officer in the field can "get to" a strip search somewhere before probable cause.  Further, although Chief Morse testified that during training, officers are instructed that a strip search should only be conducted in "specific, limited, rare circumstances," the policy nevertheless contains no such requirement and lacks any definition or context as to what

---

[92] *United States v. Glenn*, 204 F.Supp.3d 893, 906 (M.D. La. 2016)(quoting *United States v. Ortiz*, 781 F.3d 221, 229 (5th Cir. 2015) (quoting *United States v. Fields*, 456 F.3d 519, 523 (5th Cir. 2006))).
[93] *Id*. at 906 (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)).
[94] *See id.*; *United States v. Jones*, 187 F.Supp.3d 714 (M.D. La. 2016);
[95] *United States v. Monsivais*, 848 F.3d 353, 357 (5th Cir. 2017)(quoting *United States v. Zavala*, 541 F.3d 562, 574 (5th Cir. 2008)(quoting *United States v. Lopez–Moreno*, 420 F.3d 420, 430 (5th Cir. 2005))).

constitutes "limited, rare circumstances."   Similarly, while officers are purportedly trained to exhaust less intrusive means before conducting a strip search, the policy does not include this requirement.  The Court asked counsel for Defendants when on this purported sliding scale continuum may a strip search be lawfully conducted; counsel responded, when the facts "slide toward probable cause."

For the foregoing reasons, the Court finds that, for any search beyond a frisk or pat-down of a citizen stopped pursuant to an investigatory stop, the Constitution requires that police officers have probable cause.  Accordingly, the Court finds that Plaintiff has demonstrated a substantial likelihood of success on the merits that the pertinent portion of the BRPD strip search policy as to non-arrestees is unconstitutional on its face.

### C.  Balance of Equities/Public Interests

The final two elements Plaintiff must satisfy for a preliminary injunction are that the threatened harm outweighs any harm that may result to the City/Parish and/or BRPD and that the injunction will not undermine the public interest.[96] These factors may be considered together particularly because, "[t]hese factors merge when the Government is the opposing party,"[97] and these two factors overlap considerably.[98] In weighing equities, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.[99] The public interest factor requires the court to consider what public interests may be served by granting or denying a preliminary injunction.[100]

---

[96] *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997).
[97] *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009).
[98] *Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015).
[99] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).
[100] *Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 997–98 (8th Cir. 2011).

Plaintiff maintains that the balance of harms "indisputably weighs" in his favor because the unconstitutional policy remains in effect and, thus, subjects him and all Baton Rouge citizens to the threat of constitutional violations.[101]  He also argues that the City/Parish and BRPD are not benefitted by the continued use of an unconstitutional policy.[102]  As to the public interest, citing jurisprudence, Plaintiff maintains "'It is always in the public interest to prevent the violation of a party's constitutional rights.'"[103]

The Defendants claim that, "due to the discretionary basis of officers' authority to conduct strip searches, an injunction against General Order No. 281 would potentially create less guidance on when and how officers may utilize strip searches."[104] However, this argument is based on Defendants' belief that their policy is "consistent with the IACP model policy for strip searches as well as in conformity with generally accepted police practices, policy and procedure, and training."[105]  Defendants further argue that the policy operates to protect police officers and the public from suspects who may be carrying weapons, and enjoining the policy "would be severely impractical and lead to dangerous situations for officers, civilians, and suspects/arrestees. Under such circumstances is there no possibility that an individual's harm, if any, could outweigh the parish-wide risks associated with the removal of an entire methodology of a generally acceptable police investigative measure, especially in high crime areas and toward those perceived to be concealing contraband."[106]

---

[101] Rec. Doc. 76-1, p. 12.
[102] *Id.* at p. 13.
[103] *Id.* (quoting *Simms v. District of Columbia*, 872 F.Supp.2d 90, 105 (D.D.C. 2012) (collecting cases).
[104] Rec. Doc. 85, p. 13.
[105] *Id.*
[106] *Id.* at p. 14.

The Court finds that the balance of equities and public interest weigh in favor of enjoining an unconstitutional policy. Indeed, the Fifth Circuit holds that an injunction does not disserve the public interest when it prevents constitutional deprivations.[107] Stated another way, injunctions preventing the violation of constitutional rights are "always in the public interest."[108]

Defendants repeatedly make arguments acknowledging their belief that an officer "has reasonable suspicion to strip search," but they fail to direct the Court to any authority to justify this policy for non-arrestees.  Although Plaintiff cited to several of the decisions the Court has discussed, Defendants ignored those cases and focused on strip searches involved in custodial settings.

The Court acknowledges the danger that police officers face on a daily basis, and the Court does not diminish officers' need to secure their safety when conducting investigations of any kind.  In no way does the Court wish to reduce the tools available to police officers to achieve this safety. However, these tools **must** be used and applied in a constitutional manner.  As the Supreme Court has repeatedly instructed, a court "should not uphold an unconstitutional [policy] merely because the Government promised to use it responsibly."[109] In the *Ringe* case discussed above, the protection of police officers and the public was held insufficient to justify the warrantless searches.  There, the court held that "the public danger of being harmed by an individual carrying a weapon cannot justify

---

[107] *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014).

[108] *See Ingebretsen on behalf of Ingebretsen v. Jackson Public Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996); *see also, e.g., G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994); *Charles H. Wesley Educ. Fdn., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005). *Deerfield Med. Ctr.*, 661 F.2d at 338-39.

[109] *Trump v. United States*, 603 U.S. ---, 2024 WL 3237603, at *22 (2024)(quoting *United States v. Stevens*, 559 U.S. 460, 480 (2010)).

a blanket policy of warrantless searches without probable cause."[110]   Under this same reasoning, the Court finds that the balance of equities/public interest consideration weighs in favor of enjoining the BRPD strip search policy pertaining to non-arrestees.

## VII.    CONCLUSION

For the foregoing reasons, the limited Motion to Consolidate[111] filed by Plaintiff Jeremy Lee in *Lee v. Lawrence Jr, et al*., Case No. 23-cv-01229-SDD-SDJ is GRANTED for the relevant motions only. Further, the Motion for Preliminary Injunction filed in *Lee v. Lawrence Jr, et al*., Case No. 23-cv-01229-SDD-SDJ,[112] by Plaintiff, Jeremy Lee, and the Motion for Preliminary Injunction filed in *Brown v. Lawrence Jr., et al*., Case No. 23-cv-1313-JWD-EWD,[113] filed by Plaintiff, Ternell L. Brown, are GRANTED.  Having concluded this matter, the cases are no longer consolidated as they proceed.

**IT IS ORDERED** that Defendants are enjoined from utilizing General Order 281, Section III.C, as written, pertaining to non-arrestees during investigatory stops.

Baton Rouge, Louisiana, this 12th day of July, 2024.

_Shelly D. Dick_

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[110] *Ringe*, 624 F.Supp. at 421 (citing *United States v. Skipwith*, 482 F.2d at 1275 & n. 4).
[111] Rec. Doc. 77.
[112] Rec. Doc. 76.
[113] Rec. Doc. 52 in 23-cv-1313-JWD-EWD.