# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**TERNELL L. BROWN**

**VERSUS**

**TROY LAWRENCE, JR., ET AL.**

**CIVIL ACTION**

**NO. 23-1313-JWD-EWD**

## RULING AND ORDER ON
## ALVARADO-CRUZ'S MOTION TO DISMISS

This matter comes before the Court on the *Motion to Dismiss* (Doc. 89) filed by Defendant Katherinne F. Alvarado-Cruz ("Alvarado-Cruz"). Plaintiff, Ternell Brown, ("Plaintiff" or "Brown") opposes the motion, (Doc. 98), and Alvarado-Cruz has filed a reply, (Doc 99). Both parties have also submitted supplemental briefs, (Docs. 103, 105), in response to a July 7, 2024, *Ruling* by Chief Judge Dick which the Court will discuss below. Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Alvarado-Cruz's motion is denied.

## I.    RELEVANT FACTUAL BACKGROUND[1]

### A.  The Underlying Incident

This case is one of several in this district involving the Baton Rouge Police Department's ("BRPD's") "BRAVE Cave." (*See SAC*, Doc. 78 at 1–2.) While the Brave Cave has been subject to various news accounts, the operative complaint defines the Brave Cave as follows:

---

[1] The following factual allegations are primarily taken from Plaintiff's *Second Amended Complaint with Jury Demand* ("*SAC*"), Doc. 78. The well-pled allegations are assumed to be true for purposes of this motion. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).

> "The BRAVE Cave" is an unmarked BRPD facility . . . that was closed in September 2023 shortly after reports of torture committed by members of the Street Crimes Unit became public. It is not a jail or detention facility; no correctional staff work at "the BRAVE Cave." Rather, it is a warehouse that the Street Crimes Unit has adopted as their home base over the past several years. It is a place where BRPD takes suspects to interrogate them, gather intelligence, and attempt to "flip" them to begin cooperating with BRPD.

(*Id.* ¶ 24.)

The events of this case occurred on the night of Saturday, June 10, 2023. Around 5:17 p.m., Plaintiff, a grandmother, and her husband were driving a black Dodge Charger in the 2500 block of Plank Road, Baton Rouge. (*Id.* ¶¶ 5–7.) Defendants Troy Lawrence, Jr., and Matthew Wallace were two members of the BRPD Street Crimes Unit who were patrolling the area at the same time. (*See id.*) Wallace elected to initiate a traffic stop of the black Dodge Charger, and Lawrence arrived on the scene within seconds to assist. (*Id.* ¶¶ 6–9.)

Lawrence ordered Brown to place her hands behind her back and placed her in handcuffs. (*Id.* ¶ 12.) Lawrence ordered her to wait beside his vehicle while Wallace searched the car "without . . . consent or a warrant." (*Id.* ¶¶ 13–14.)

"During the search, Wallace discovered several bottles of prescription medication belonging to Mrs. Brown. He opened the containers." (*Id.* ¶ 16.) "Mrs. Brown informed Lawrence and Wallace at least four times that she was in lawful possession of the pills as they had been prescribed to her and offered to show proof of this fact." (*Id.* ¶ 17.) Both officers ignored her attempts to demonstrate that she had prescriptions for the pills, and both told her she was not allowed to carry multiple prescriptions in the same bottle, even though it is not illegal to do so. (*Id.* ¶¶ 18–19.) Brown continued to plead with the officers and told them she could provide proof that she was in lawful possession of the medication, but the officers replied that "a judge would sort it out." (*Id.* ¶¶ 20–21.)

Lawrence also told her, falsely, that she was being "taken to jail" for possession of a controlled firearm with a CDS. (*Id.* ¶ 21.) Wallace said, "We don't know if it's something you bought off the streets, or what?" (*Id.* ¶ 22.)

Wallace and Lawrence ordered Brown into a BRPD vehicle driven by a BRPD Officer Doe, and all three "forcibly (i.e., without her consent) transported Mrs. Brown to 'the BRAVE Cave' by ordering her into DOE's vehicle in handcuffs." (*Id.* ¶ 23.) "Wallace and Lawrence drove to the BRAVE Cave separately and met [Doe] and Brown there." (*Id.*)

Plaintiff was brought to the Brave Cave "because they suspected she might be involved in illegal drug activity." (*Id.* ¶ 25.) The *SAC* further states:

> [ ] Mrs. Brown was not brought to "the BRAVE Cave" to be "processed" for eventual transfer to the East Baton Rouge Parish Prison. Rather, she was brought to the facility to be further searched and questioned.

> [ ] Mrs. Brown was a "detainee" who was being held while the officers investigated whether there was probable cause to arrest her for a drug offense.

(*Id.* ¶¶ 26–27.) Plaintiff was held there for over two hours, during which time the officers intentionally turned their body-worn cameras off despite the ongoing investigation. (*Id.* ¶¶ 28–29.)

"Defendants Lawrence, Wallace, and Alvarado[-Cruz] subjected Mrs. Brown to Strip and Body Cavity searches." (*Id.* ¶ 30.)

> At the request of Wallace and Lawrence, Alvarado[-Cruz] examined Mrs. Brown, forced her to spread her vagina and buttocks for inspection, and examined her vagina using a flashlight. Defendants Lawrence, Wallace, Doe, and Alvarado[-Cruz] did not have a warrant, probable cause, or consent to conduct either a Strip or a Body Cavity search.

(*Id.* ¶ 31.) "Once satisfied that Mrs. Brown was not hiding a weapon or contraband in her rectum or vagina, she was released from 'the BRAVE Cave' without charge." (*Id.* ¶ 32.)

After the experience was over, Plaintiff filed a complaint in person at the BRPD headquarters, but "[s]he was told that the officers had done nothing wrong and that her treatment was proper." (*Id.* ¶ 33.) Plaintiff describes the emotional injury she endured:

> Mrs. Brown was subject to a traumatic and highly invasive strip search at the hands of the BRPD without probable cause; she continues to live in Baton Rouge, and she therefore must endure ongoing and justified fears that she will one day be subject to another humiliating and degrading violation of her constitutional rights at the hands of BRPD officers. This fear is particularly acute in light of the City-Parish's recent court filings asserting that BRPD officers acted lawfully in strip-searching her and its erroneous assertion that "individualized reasonable suspicion is a proper standard from which a strip search can take place."

(*Id.* ¶ 34 (citation omitted).)

## B. Broader Allegations Against the City/Parish and Its Policies

The *SAC* continues to allege how the officers were acting pursuant to a formal BRPD policy. (*Id.* ¶ 35.) Specifically, BRPD Policy General Order No. 281 allowed for strip searches based on reasonable suspicion. (*Id.* ¶ 36.) Plaintiff claims this violates Supreme Court precedent, which allows officers to conduct only frisks based on reasonable suspicion. (*Id.* ¶¶ 37–38.)

The *SAC* describes the history of illegal strip searches by the BRPD Street Crimes Unit. (*id.* ¶¶ 39–45), its history of misconduct, (*id.* ¶¶ 46–69), and the protection it received by BRPD leadership, (*id.* ¶ 70–83). The *SAC* also details the policymaker's deliberate indifference to the obvious consequences of Lawrence and Wallace's alleged misconduct, (*id.* ¶¶ 84–153), and BRPD's history of retaliating against critics and "fostering a culture of impunity for police violence," (*id.* ¶¶ 154–161.) While important, these allegations are not relevant to the instant motion.

### C.  Plaintiff's Claims and Other Relevant Procedural History

The *SAC* brings claims against Lawrence, Wallace, Alvarado-Cruz, certain unknown officers (including Doe), BRPD,[2] the City of Baton Rouge, and Parish of Baton Rouge. (*Id.* ¶ 2.) Count I is a claim under 42 U.S.C. § 1983 for an unreasonable search in violation of the Fourth Amendment against Lawrence, Wallace, Doe, and Alvarado-Cruz for "participat[ing] and facilitat[ing] her strip-search inside the BRAVE Cave." (*Id.* ¶ 162.) Count II alleges an unreasonable seizure in violation of the Fourth Amendment against the same defendants for Plaintiff's being "forcibly transported [ ] to the BRAVE Cave (Lawrence, Wallace, Doe) and [ ] participat[ing] in holding her there for hours (Lawrence, Wallace, Doe, Alvarado[-Cruz])," all "without a warrant and without probable cause." (*Id.* ¶¶ 164–65.) Counts III and IV allege *Monell* liability for Counts I and II against the City/Parish. (*Id.* ¶¶ 167–173.) Counts V through IX assert state law claims of battery, assault, intentional infliction of emotional distress ("IIED"), false imprisonment, and negligence against all defendants. (*Id.* ¶ 174.) Count X pleads state constitutional violations. (*Id.* ¶ 182.)

Plaintiff prayed for compensatory, special, and punitive damages. (*Id.* ¶ 184.) Plaintiff also sought "[i]njunctive relief to enjoin future violations of the Fourth Amendment, including those conducted pursuant [to] [BRPD] General Order No. 281. . . ." (*Id.*)

In connection with this last request, Plaintiff filed a *Motion for Preliminary Injunction* (Doc. 52) seeking to "enjoin[ ] Defendants from implementing the official policy reflected in General Order No. 281 and from conducting the unconstitutional strip searches purportedly authorized by said policy in violation of the Fourth Amendment." (*Id.*) That motion was consolidated with another Brave Cave case pending before Chief Judge Dick for the limited

---

[2] The question of whether Plaintiff in fact brings claims against BRPD will be addressed in the ruling on the City/Parish's motion to dismiss. (*See* Doc. 83-2 at 4–7; Doc. 87 at 1.)

purpose of ruling on the same issue. (Doc. 100.) Chief Judge Dick issued a *Ruling* granting that

motion and explaining:

> The issue before the Court on these motions is whether the BRPD's
> strip search policy regarding non-arrestees is constitutional. This
> policy, General Order No. 281, allows police officers to conduct
> strip searches based on an "individualized articulable reasonable
> suspicion" standard; it does not require probable cause to strip
> search. Because the United States Supreme Court has plainly held
> that probable cause is required to go beyond a frisk or pat-down of
> a citizen during an investigatory stop, the Court finds that General
> Order No. 281, Section III.C is unconstitutional on its face and must
> be enjoined. This holding does not apply to any other provisions in
> General Order No. 281.

(Doc. 100 at 2; *Lee v. Lawrence*, No. 23-1229, 2024 WL 3385644, at *1 (M.D. La. July 12, 2024).)

All Defendants also filed motions to dismiss for failure to state a claim. (Docs. 82, 83, 85,

89.) The Court now takes up Alvarado-Cruz's. (Doc. 89.) In sum, Alvarado-Cruz argues: (1)

Plaintiff's federal claims should be dismissed because of qualified immunity, and (2) Plaintiff fails

to state viable claims under state law against her. (Doc. 89-1 at 2–3.)

## II.    RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dallas Cnty*.,

79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to

relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201,

210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states

a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

## III. DISCUSSION: § 1983 CLAIMS

### A. Parties' Arguments

#### 1. Alvarado-Cruz's Memorandum in Support (Doc. 89-1)

Alvarado-Cruz first contends that, even if the search and seizure in this case was unconstitutional, she would still be entitled to qualified immunity because the rights were not clearly established at the time they were conducted. (Doc. 89-1 at 5.) "While it is well-settled that visual strip and body cavity searches are permissible so long as they are reasonable, the question of what constitutes a reasonable search with respect to detainees who are not admitted into the

general population has yet to be answered." (*Id.* at 6.) While it is clearly established that strip searches of detainees admitted into the general population is lawful if supported by reasonable suspicion that the arrestee may be concealing a weapon or contraband, "the contours of a strip and body cavity searches for arrestees who will not be admitted into the general population is unclear." (*Id.* at 6–7.) "Because there is no controlling authority specifically prohibiting or (allowing) [ ] Alvarado-Cruz's actions, it cannot be said that she violated a clearly established law." (*Id.* at 7.)

Alvarado-Cruz also maintains that the search at issue was justified because they had probable cause to arrest Plaintiff. (*Id.* at 8.) Thus, the law governing *Terry* stops and frisks is not applicable here, as "[t]he type of search involved here is one incident to a lawful arrest, with the nuance of a suspect that was not admitted to the general population." (*Id.* at 8–9.) Alvarado-Cruz cites to *United States v. Ruigomez*, 702 F.2d 61 (5th Cir. 1983), where a strip search performed at the station house incident to an arrest was purportedly upheld. (*Id.* at 10.)

In any event, Alvarado-Cruz had reasonable suspicion and probable cause of criminal misconduct based on Plaintiff's suspicious behavior of combining pills in the same container. (*Id.* at 10–14.) Specifically, the officers reasonably believed Plaintiff was violating the law prohibiting the possession of a controlled substance without a valid prescription. (*Id.* at 13.) As to the length of time of the search, there's no clearly established law prohibiting officers from detaining a suspect for two hours for investigative purposes based on probable cause. (*Id.* at 14.)

### 2. *Plaintiff's Opposition (Doc. 98)*

Plaintiff responds that Alvarado-Cruz's "argument might have purchase" if the Brave Cave "were a real jail or prison" where "the reasonable expectations of privacy held by prisoners in such facilities is substantially lower when compared to those enjoyed by the rest of us." (Doc. 98 at 2.) But this defendant ignores what is alleged in the *SAC*: that the Brave Cave was not a jail, prison,

or "processing center"; that Plaintiff was not "processed" there; and that she was brought to the Brave Cave for further questioning and a search. (*Id.*) In any event, even if the Brave Cave were like a jail, a blanket strip-search policy based solely on reasonable suspicion would be unconstitutional. (*Id.* at 2–3.)

Further, Alvarado-Cruz errs in arguing that Plaintiff was an arrestee and was about to be admitted into some place other than the general population. (*Id.* at 3.) Again, Plaintiff was brought to the Brave Cave not for "processing" or because she was an "arrestee" but so that an unlawful strip search could be conducted. (*Id.*) Thus, "Defendant Alvarado[-Cruz]'s argument rests on at least two bogus assumptions—that Ms. Brown was an arrestee, and that her search was part of her admission to a carceral facility—both of which completely ignore the factual allegations contained in the complaint." (*Id.*)

> [T]here is not an iota of authority that such a search is acceptable when the person searched is a non-arrestee, and there is not an iota of authority that search a search is acceptable when the person is not *lawfully* arrested based on probable cause. As made clear in the complaint, (1) Ms. Brown was not an "arrestee," or (2) if she was an "arrestee," she certainly was not lawfully arrested, because there was no probable cause for her arrest.

(*Id.* at 4.) Thus, the search was unlawful. (*Id.*)

As to the unreasonable seizure claim, Plaintiff acknowledges that Wallace and Lawrence are more culpable, but she maintains that Alvarado-Cruz ignores the *SAC*. (*Id.*) According to Plaintiff:

> "Nothing in Louisiana law prohibits a grandmother from carrying prescription medicine that was lawfully prescribed to her, particularly where she has proof of her prescription on her smartphone and where police officers "ignore[] . . . [the grandmother's] efforts to demonstrate that she had prescriptions for the pills" and refuse to consider "proof that she was in lawful possession of the medication."

(*Id.* (quoting Doc. 88 at 2).) Plaintiff highlights how the *SAC* pleads that Plaintiff had "immediate access to proof of her prescription, but the arresting officers affirmatively rebuffed her pleas to show it to them." (*Id.* at 5 (quoting *SAC* ¶¶ 18, 20–21).) Further, even if Brown did not have proof of a lawful prescription on her and even if the officers had not refused her efforts to examine the prescription, qualified immunity would be improper because the statutes at issue only prohibit possessing controlled substances without a lawful prescription, and there's nothing in the statutes prohibiting someone from appearing in public with them, particularly when they have a digital copy of the prescription on their person. (*Id.* (citations omitted).) Though Alvarado-Cruz was not the arresting officer, the *SAC* still alleges that Plaintiff was held in the Brave Cave by her. (*Id.* at 5–6.) At the very least, Alvarado-Cruz is liable under bystander liability for failing to intervene to stop Wallace and Lawrence's constitutional violations. (*Id.* at 6.)

### 3. *Alvarado-Cruz's Reply Brief (Doc. 99)*

Alvarado-Cruz replies that Plaintiff's efforts to negate qualified immunity are "not grounded in law" and "are merely unsupported allegations thrown out in attempt to square a circle." (Doc 99 at 1.) Alvarado-Cruz "begin[s] our analysis by 'separating the wheat from the chaff.'" (*Id.* (citation omitted).) The issue is not whether there is caselaw *authorizing* Alvarado-Cruz's conduct but rather if there is clearly established law *prohibiting* this defendant's conduct. (*Id.* at 1–3.) Plaintiff has not done so. (*Id.* at 3.) Further, Plaintiff errs in arguing that the visual strip search would only be lawful if conducted in a jail or prison; other cases have authorized searches in gas station parking lots and workplace restrooms. (*Id.* at 3–4.)

Moreover, plaintiff was "arrested" for purposes of the Louisiana Code of Criminal Procedure and Fifth Circuit case law. (*Id.* at 4.) Likewise, Plaintiff was not admitted into the general population but was instead released after the search, and that fact makes the right at issue

not clearly established. (*Id.* at 4–5.) There is no jurisprudence clearly establishing that every reasonable officer in Alvarado-Cruz's shoes would have known that her conduct was unlawful. (*Id.* at 5.)

As to the unreasonable seizure, there is nothing alleged in the *SAC* that attributes knowledge of any constitutional violation to Alvarado-Cruz, "[n]or can there be, as Plaintiff was lawfully arrested based on probable cause." (*Id.* at 6.) Even if Plaintiff had a prescription for her pills, Wallace was not a doctor or pharmacist that could determine if the pills in the bottle were connected to the prescription Plaintiff had available, and he was not obligated to forego arresting to investigate whether the pills were actually prescribed. (*Id.*)

### 4. *Plaintiff's Pocket Brief (Doc. 103)*

After the parties were asked to brief the effect of Judge Dick's ruling, Plaintiff summarized the situation as follows:

> Briefly, the crux of Defendants' position(s) over the past year has been the following: **(1)** we have the right to strip-search non-arrestees based on reasonable suspicion, a practice that's been both legal and the norm for years . . . and explains the very existence of the BRAVE Cave; and **(2)** Ms. Brown's detention was converted to an "arrest" when we abducted her to the BRAVE Cave (and, hence, defendants imply, we could conduct a lawful "strip-search incident to [lawful] arrest"). Chief Judge Dick's Ruling eliminates the first argument, but this Court must still consider the second contention to fully address the pending motions to dismiss.

(Doc. 103 at 1–2.)

Plaintiff mainly addresses the City-Parish's brief first, but in doing so she attacks Alvarado-Cruz's qualified immunity argument:

> The individual defendants might argue, "Ah, but a reasonable officer could have *thought* that it was legal to strip-search based on ambiguities in the law," and it is true that the Chief Judge's Ruling did not expressly address the qualified immunity question (which was not before the court). But her opinion makes clear that U.S.

Supreme Court and Fifth Circuit case law renders Defendants' position frivolous. If there is any doubt on this particular issue, Plaintiff points the Court to additional authority, in which the Fifth Circuit **expressly rejected the argument** that an officer is entitled to qualified immunity when he conducts a strip-search in a "borderline" case where he may have suspected a detainee was armed (but lacked probable cause to strip-search). *Williams v. Kaufman County*, 352 F.3d 994, 1007 (5th Cir. 2003) ("In sum, *Ybarra*, *Stewart* and *Watt* dispel any doubt that the law was clearly established by the night of the raid in April, 1995, that strip searching individuals, about whom the police had no individualized probable cause of weapon or drug possession, was unlawful. This in turn precludes Harris's entitlement to qualified immunity.").

(*Id.* at 2–3.)

Plaintiff then attacks the "back-up argument" that she was arrested and then strip-searched

pursuant to an arrest. (*Id.* at 3.) But Plaintiff says this ignores the allegations of the *SAC*:

It is simply absurd to suggest that a full custodial arrest and strip-search (not at a jail, but at an off-the-books warehouse) is lawful where (a) a citizen is in possession of prescription pills; (b) she has proof of her prescription on her person; and (c) she repeatedly attempts to show the officers that prescription. Apart from ignoring common sense and Louisiana law, it also ignores the factual allegations contained in the complaint. *Compare, e.g.*, SAC, ¶ 27 ("Mrs. Brown was a 'detainee' who was being held while the officers investigated whether there was probable cause to arrest her for a drug offense.") *with* Dkt. 102, *3 (pocket brief of Defendant Wallace) (informing the court, falsely, "Brown has not argued that she was a non-arrestee"). Without exaggeration, it is an argument for a police state: Defendants are telling the Court that they believe they can lawfully arrest and strip-search individuals for engaging in innocuous, lawful, and banal conduct that probably half the employees of the federal courthouse engage in daily.

(*Id.* at 3.) Plaintiff notes that, under BRPD General Order No. 281(C)(2), strip-searches of non-

arrests are required to occur "in a fully enclosed room that is not accessible to the public," and

Plaintiff says the defendants' position would render this general order "a nullity, because every

time a BRPD officer followed it, it would magically convert a 'non-arrestee' into an 'arrestee.'"

(*Id.* at 4.)

12

In sum, if Plaintiff was seized unlawfully, then it cannot be justified under the Fourth Amendment as being incident to a lawful arrest. (*Id*.) And, even if she were "arrested" and the arrest was "lawful" at the time of the search, strip-searches are only allowed when conducted at custodial facilities like East Baton Rouge Parish Prison, "not BRPD officers at an unmarked warehouse." (*Id*.)

### 5. *Alvarado-Cruz's Pocket Brief (Doc. 105)*

Alvarado-Cruz reiterates that Plaintiff was "an arrestee at all relevant times." (Doc. 105 at 1.) Chief Judge Dick's ruling found the BRPD policy of non-arrestees unconstitutional, but she did not address the standard for an arrestee. (*Id.* at 1–2.) Alvarado-Cruz reiterates the law governing what constitutes an arrest, particularly *Lincoln v. Turner*, 874 F.3d 833, 841 (5th Cir. 2017), where the Fifth Circuit purportedly found a detained person who was handcuffed and in the back of a police car for roughly two hours to be arrested. (*Id.* at 3.) Alvarado-Cruz then reiterates that the law was not clearly established about the legality of strip searches where an individual is arrested but held without assignment to the general jail population and without substantial contact with other detainees. (*Id.* at 4.)

### B. Law and Analysis

"Qualified immunity shields government officials performing discretionary functions from civil damages liability 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Crittindon v. LeBlanc*, 37 F.4th 177, 185 (5th Cir. 2022) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "Determining whether an officer is entitled to qualified immunity requires a two-step inquiry." *Id.* "First, we ask whether the officer's alleged conduct has violated a federal right. Second, we ask whether the right in question was clearly established at the time of the alleged violation, such that the officer was on

notice of the unlawfulness of his or her conduct." *Id.* at 185–86 (cleaned up). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Alvarado-Cruz spills much ink on these issues—first arguing that the law in this area was not clearly established and then asserting that Plaintiff's claims are defeated because she was searched incident to a lawful arrest supported by probable cause. However, the Court easily dispenses with these positions.

As to the first argument, "[i]n determining what constitutes clearly established law, [the Fifth Circuit] first looks to Supreme Court precedent and then to [its] own." *Crittindon*, 37 F.4th at 186 (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)). "When there is no direct controlling authority, '[the Fifth Circuit] may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority." *Id.* (quoting *Shumpert*, 905 F.3d at 320 (internal quotation marks and citation omitted)). "Ultimately, the touchstone is 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Id.* (quoting *Shumpert*, 905 F.3d at 321 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002))).

In this case, Chief Judge Dick provided an exquisite analysis of the relevant caselaw on this issue and concluded, "the Court is unpersuaded that anything less than probable cause is sufficient to justify a strip search of a non-arrestee." *Lee*, 2024 WL 3385644, at *11. The Chief Judge discussed at length *Sims v. City of New Orleans*, where then District Judge Engelhardt also surveyed Supreme Court and Fifth Circuit jurisprudence and concluded that "the law was clearly

established that strip searching individuals, about whom the police had no individualized probable cause of weapon or contraband possession, was unlawful." No. 03-3169, 2005 WL 1400440, at *14 (E.D. La. June 6, 2005) (citing, inter alia, *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1007 (5th Cir. 2003) ("*Ybarra*, *Stewart* and *Watt* dispel any doubt that the law was clearly established by the night of the raid in April, 1995, that strip searching individuals, about whom the police had no individualized probable cause of weapon or drug possession, was unlawful.")).

Thus, the Court finds that Alvarado-Cruz had "fair warning" that probable cause was needed to perform a strip search on Plaintiff. *See Crittindon*, 37 F.4th at 186. In short, the rights in this case were clearly established.

The second argument is related but also meritless. Granted, "[o]ne ... exception to the warrant requirement exists for searches incident to a lawful arrest." *Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 367 (M.D. La. 2022) (deGravelles, J.) (quoting *United States v. Ho*, 94 F.3d 932, 935 (5th Cir. 1996) (citing *United States v. Barlow*, 17 F.3d 85, 89 (5th Cir. 1994))). But "[a] warrantless arrest must be based on probable cause. If an officer lacked probable cause, and if the arrest is invalid, that search is unlawful under the Fourth Amendment." *Id.* (cleaned up). Thus, even assuming that Plaintiff was "arrested" when brought to the Brave Cave (a question which the Court need not answer, but seems doubtful to the Court),[3] that arrest must ultimately be supported by probable cause. *See id.* at 701–02 (citations omitted).

---

[3] Again, the *SAC* alleges:

> [ ] Mrs. Brown was not brought to "the BRAVE Cave" to be "processed" for eventual transfer to the East Baton Rouge Parish Prison. Rather, she was brought to the facility to be further searched and questioned.

> [ ] Mrs. Brown was a "detainee" who was being held while the officers investigated whether there was probable cause to arrest her for a drug offense.

(*SAC.* ¶¶ 26–27, Doc. 78.)

> "Probable cause exists when the "totality of the facts and circumstances" within an officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (internal quotation and citation omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." [*Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004)] (citations omitted). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Id.*, 543 U.S. at 153 [ ] (citations omitted). "That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.*, 543 U.S. at 153 [ ].

*Imani*, 614 F. Supp. 3d at 361.

Here, when construing the *SAC* in a light most favorable to Plaintiff and when drawing reasonable inferences in her favor, the Court easily concludes that, under the totality of the circumstances, Alvarado-Cruz did not have probable cause to search and arrest Plaintiff. Again, "Mrs. Brown informed Lawrence and Wallace at least four times that she was in lawful possession of the pills as they had been prescribed to her and offered to show proof of this fact." (*SAC* ¶ 17, Doc. 78.) Lawrence and Wallace ignored her attempts to demonstrate that she had prescriptions for the pills, and both told her she was not allowed to carry multiple prescriptions in the same bottle, even though it is not illegal to do so. (*Id.* ¶¶ 18–19.) Brown continued to plead with the officers and told them she could provide proof that she was in lawful possession of the medication, but the officers replied, "a judge would sort it out." (*Id.* ¶¶ 20–21.) There are no other facts listed in the *SAC* that would justify probable cause to arrest this grandmother, and no other facts justify the extremely invasive search of her body. The Court finds this scant showing insufficient. Yet, despite this, "Alvarado[-Cruz] examined Mrs. Brown, forced her to spread her vagina and buttocks for inspection, and examined her vagina using a flashlight." (*Id.* ¶ 31.) Considering all of this, there was no probable cause to search Plaintiff.

As to the unlawful seizure claim, Plaintiff concedes that Wallace and Lawrence were more culpable, but the *SAC* plainly alleges that Alvarado-Cruz "participated in holding [Plaintiff] [in the Brave Cave] for hours," again, without probable cause. (*Id.* ¶¶ 164–65; *see also id.* ¶¶ 17–21.) Thus, Plaintiff also stated a viable unlawful seizure claim.

For both claims, Alvarado-Cruz argues that the officers were justified in making the arrest and searching because of the manner in which Plaintiff carried the prescription, but this is not a reasonable reading of the criminal statutes at issue. For instance, La. Rev. Stat. § 40:966(C) states:

> It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule I *unless such substance was obtained directly, or pursuant to a valid prescription or order*, from a practitioner or as provided in R.S. 40:978, while acting in the course of his professional practice, or except as otherwise authorized by this Part.

Here, Plaintiff alleges that she was possessing the substances pursuant to such a prescription. A fair reading of the statute does not make it illegal to carry multiple pills legally prescribed in a single bottle, especially when the possessor also has proof of the prescriptions on her person—and offers to show that proof. And while "a suspect's declaration of innocence does not vitiate probable cause," *Loftin v. City of Prentiss*, 33 F.4th 774, 782 (5th Cir. 2022), here, Plaintiff does not merely *declare* innocence; she offered to provide proof of it numerous times, to which the officers turned a blind eye.

In sum, when considering the totality of the circumstances in a light most favorable to Plaintiff and when drawing reasonable inferences in her favor, the Court finds that the officers, including Alvarado-Cruz, lacked sufficient facts within the officers' knowledge to support a finding of probable cause to search or seize Plaintiff. At the very least, Plaintiff's claims are plausible because they are "supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun*, 855 F. App'x at 919–20

(citations omitted). As a result, Alvarado-Cruz's motion will be denied as to Plaintiff's § 1983 claims.[4]

## IV.  DISCUSSION: STATE LAW CLAIMS

### A.  False Imprisonment

Alvarado-Cruz contends that the false imprisonment claim fails, in short, because Plaintiff was lawfully detained, and Plaintiff's allegations to the contrary are conclusory. (Doc. 89-1 at 17–18.)

Plaintiff responds that her false imprisonment claim under state law follows directly from the unconstitutional seizure claim under the Fourth Amendment. (Doc. 98 at 8.) The allegations of the *SAC* show that she was seized and taken to the BRAVE Cave unlawfully. (*Id.*)

In reply, Alvarado-Cruz says that a false imprisonment claim requires an unlawful detention, and, here, Plaintiff was lawfully arrested based on probable cause. (Doc. 99 at 9–10.)

"Under Louisiana law, '[f]alse arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority. Simply stated, it is restraint without color of legal authority.'" *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 514 (M.D. La. 2013) (quoting *Kyle v. City of New Orleans*, 353 So. 2d 969, 971 (La. 1977)). "[I]f police officers act pursuant to statutory authority in arresting and incarcerating a citizen, they are not liable for damages for false arrest and imprisonment." *Id.* (quoting *Kyle*, 353 So. 2d at 971). *See also* La. Code Crim. Proc. arts. 213 (describing circumstances of warrantless arrest), 215.1 (describing circumstances of *Terry* stop).

---

[4] While it appears from the *SAC* that Plaintiff may have a viable failure-to-intervene claim, *see Imani*, 614 F. Supp. 3d at 371–72 (describing elements of this claim), the Court declines to reach this issue because (a) it is unclear whether this claim is asserted in the *SAC* and (b) Alvarado-Cruz did not seek dismissal of this claim in her original memorandum.

This Court's analysis as to Plaintiffs' § 1983 false imprisonment applies with equal force to the state law claims. *See Elphage*, 969 F. Supp. 2d at 515 (citing *Harrison v. State Through Dept. of Pub. Safety and Corr.*, 97-1086 (La. 12/1/98), 721 So. 2d 458, 462–63); *O'Dwyer v. Nelson*, 310 F. App'x 741, 745 n.4 (5th Cir. 2009) (finding that, because Fourth Amendment principles underpin Louisiana law relating to false arrests, the Fourth Amendment inquiry was applicable to both O'Dwyer's federal and state law claims (citing *Harrison*, 721 So. 2d at 462–63)). *See also Curran v. Aleshire*, 67 F. Supp. 3d 741, 754 (E.D. La. 2014) (dismissing federal and state false arrest, false imprisonment, and malicious prosecution claims as *Heck*-barred). Accordingly, for the same reasons highlighted above, the Court will deny Defendants' motion on the state law false imprisonment claims. *See Imani*, 614 F. Supp. 3d at 381–82 (reaching same result for same reasons).

### B.  Battery and Assault

#### 1.  *Parties' Arguments*

According to Alvarado-Cruz, the assault and battery claims fall because the *SAC* contains no allegation that she "came into physical contact, or threatened physical contact, with Plaintiff." (Doc. 89-1 at 15–16.)

Plaintiff responds that (1) Alvarado-Cruz miscites to the criminal code rather than the elements of the torts of assault and battery, and (2) when construing the complaint liberally with reasonable inferences drawn in her favor, a reasonable inference is that there was a "harmful or offensive" contact and the threat thereof. (Doc. 98 at 7.)

In reply, Alvarado-Cruz reiterates that Plaintiff failed to allege that the officer made physical contact with her or threatened to do so during the search. (Doc. 99 at 8.) "[A]ll that the [*SAC*] alleges is that Plaintiff was 'forced to spread her vagina and buttocks for inspection, and

[Officer Alvarado-Cruz] examined [Plaintiff's] vagina using a flashlight.'" (*Id.* (quoting Doc. 78 at 7).) "Accordingly, [ ] Alvarado-Cruz never touched Plaintiff. All that [ ] Alvarado-Cruz did was visually inspect Plaintiff." (*Id.*) Moreover, Plaintiff never alleges that Alvarado-Cruz used unreasonable force on Plaintiff, so, without a viable § 1983 excessive force claim, these tort claims must be dismissed. (*Id.* at 8–9.)

### 2. *Law and Analysis*

Having carefully considered the matter, the Court rejects Alvarado-Cruz's two arguments. As to the first, under Louisiana law, "[a]ssault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." *Danks v. Grayson*, 626 F. Supp. 3d 922, 943 (E.D. La. 2022) (quoting La. Rev. Stat. Ann. § 14:36; and then citing *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1135 (5th Cir. 2014) (defining assault as "the imminent threat of a battery" (citation omitted))). "A battery, in turn, is defined as 'harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact.'" *Id.* (quoting *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987); and then citing La. Rev. Stat. Ann. § 14:33 (defining battery as "the intentional use of force or violence upon the person of another")).

Here, the *SAC* alleges, "Defendants Lawrence, Wallace, and Alvarado subjected Mrs. Brown to Strip and Body Cavity searches." (*SAC.* ¶ 30, Doc. 78.)

> At the request of Wallace and Lawrence, Alvarado examined Mrs. Brown, forced her to spread her vagina and buttocks for inspection, and examined her vagina using a flashlight. Defendants Lawrence, Wallace, Doe, and Alvarado did not have a warrant, probable cause, or consent to conduct either a Strip or a Body Cavity search.

(*Id.* ¶ 31.) As Plaintiff argues, when construing the allegations in a light most favorable to Plaintiff and when drawing reasonable inferences in her favor (as the Court must at the motion to dismiss phase, *see In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210), a reasonable inference

from these allegations is that Alvarado-Cruz came into physical contact with Plaintiff when performing the strip search and placed her in imminent apprehension of same. At the very least, Plaintiff's claims are "supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun*, 855 F. App'x at 919–20 (citations omitted). As a result, Plaintiff's assault and battery claims survive.

Alvarado-Cruz next argues that these claims should fall because they are not connected to a § 1983 excessive force claim, but the Court disagrees. It is true that "[u]nder ordinary circumstances the use of reasonable force to restrain an arrestee shields a police officer from liability for battery" and that "[e]xcessive force transforms ordinarily protected force into an actionable battery, rendering the defendant officer and his employer liable for damages." *Danks*, 626 F. Supp. 3d at 943 (citations omitted). But, here, Plaintiff is not claiming that Alvarado-Cruz used excessive force in connection with an effort to restrain an arrestee; she is alleging that Alvarado-Cruz committed an assault and battery in connection with an obtrusive and unlawful strip search.

But, even if this line of cases did apply, Plaintiff's claims would survive dismissal. Louisiana Code of Criminal Procedure Article 220 provides, "A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained." La. Code Crim. Proc. art. 220. "The use of force by law enforcement officers must be tested by the 'reasonable force' standard established by this article. The test precludes 'clearly inappropriate force.' " *Kyle*, 353 So. 2d at 972 (quoting La. Code Crim. Proc. art. 220, Official Revision Comment (b)).

"The use of force when necessary to make an arrest is a legitimate police function." *Id.*
"But if the officers use unreasonable or excessive force, they and their employer are liable for any
injuries which result." *Id.* (citations omitted); *see also Penn v. St. Tammany Par. Sheriff's Off.*,
2002-0893 (La. App. 1 Cir. 4/2/03), 843 So. 2d 1157, 1161 (stating that excessive force transforms
authorized use of force into a battery). "Whether the force used is reasonable depends upon the
totality of the facts and circumstances in each case." *Kyle*, 353 So. 2d at 973. "A court must
evaluate the officers' actions against those of ordinary, prudent, and reasonable men placed in the
same position as the officers and with the same knowledge as the officers." *Id.* "The degree of
force employed is a factual issue." *Id.* (citations omitted).

The Louisiana Supreme Court has explained further:

> Several factors to be considered in making this determination are the
> known character of the arrestee, the risks and dangers faced by the
> officers, the nature of the offense involved, the chance of the
> arrestee's escape if the particular means are not employed, the
> existence of alternative methods of arrest, the physical size, strength,
> and weaponry of the officers as compared to the arrestee, and the
> exigencies of the moment.

*Id.* (citations omitted).

Ultimately, "excessive force claims under both federal and Louisiana law turn on whether
the use of force was objectively reasonable given the totality of the circumstances. This has been
widely recognized by [the Fifth Circuit], Louisiana federal district courts, and the Louisiana
Supreme Court." *Shepherd on behalf of Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 286
(5th Cir. 2019) (collecting cases).

Here, the Court finds, under this framework, Alvarado-Cruz's use of force was excessive
and objectively unreasonable. As established, there was nothing about the "known character of the
arrestee" that made her such a threat as to justify the invasive, warrantless strip search, nor did the

officers suffer any risks or dangers after having removed her to the Brave Cave. While the nature of the offense involved may be neutral, there was no risk of escape, and the other factors weigh in Plaintiff's favor. As a result, Plaintiff has stated a viable claim for assault and battery, and Alvarado-Cruz's motion will be denied.

### C.  IIED

#### 1.  Parties' Arguments

Alvarado-Cruz next contends that Plaintiff's IIED claim fails. (Doc. 89-1 at 16–17.) According to this defendant, Plaintiff has not shown that Alvarado-Cruz's conduct meets the requisite standard for IIED claims, that she activity desired to harm Plaintiff, or that Plaintiff suffered severe emotional distress. (*Id.*)

Plaintiff maintains she has met the requirements of an IIED claim. (Doc. 98 at 8.) The unlawful seizure was essentially a kidnapping, and the search was in essence a "gross violation of her sexual privacy." (*Id.*) Plaintiff also alleges that her strip-search was "traumatic and highly invasive" and that she continues to experience "particularly acute" fears that she will be subject to another such constitutional violation. (*Id.*) Alvarado-Cruz may not have actively desired the harm, but it was substantially certain to occur. (*Id.*)

In reply, Alvarado-Cruz argues that her conduct was reasonable under the Fourth Amendment, so it cannot justify an IIED claim. (Doc. 99 at 9.) Further, Alvarado-Cruz did not intend the conduct, and her fear of future harm doesn't meet the high bar of establishing IIED. (*Id.*) "No reasonable person, especially Officer Alvarado-Cruz, would believe that performing her job duties in a reasonable manner that is not prohibited by the Constitution or case law would be substantially certain to result in such severe emotional distress that society would regard as utterly atrocious." (*Id.*)

## 2. *Applicable Law*

Under Louisiana law, Plaintiff must establish the following to recover for IIED: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

As to the first requirement, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.*

As to the second element, "[t]he distress suffered must be such that no reasonable person could be expected to endure it. Liability arises only where the mental suffering or anguish is extreme." *Id.* at 1210 (citations omitted).

As to the final prong, "[l]iability can arise only where the actor desires to inflict severe emotional distress or where he knows that such distress is certain or substantially certain to result from his conduct." *Id.* (citation omitted). "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." *Id.*

## 3. *Analysis*

Having carefully considered the matter, the Court will deny Alvarado-Cruz's motion on this issue. In short, each of the elements of an IIED claim have been met.

Specifically, the Court finds that Alvarado-Cruz's conducting of an illegal strip and body cavity search at night and holding her unlawfully for two hours in a warehouse are far beyond mere annoyances or trivialities; rather, they "go beyond all possible bounds of decency" and are "to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 1209.

Second, Plaintiff suffered severe emotional trauma. Again, Plaintiff alleges:

> Mrs. Brown was subject to a traumatic and highly invasive strip search at the hands of the BRPD without probable cause; she continues to live in Baton Rouge, and she therefore must endure ongoing and justified fears that she will one day be subject to another humiliating and degrading violation of her constitutional rights at the hands of BRPD officers. This fear is particularly acute in light of the City-Parish's recent court filings asserting that BRPD officers acted lawfully in strip-searching her and its erroneous assertion that "individualized reasonable suspicion is a proper standard from which a strip search can take place."

(*SAC* ¶ 34, Doc. 78 (citation omitted).) This is sufficiently severe to satisfy the IIED requirements.

Finally, the Court finds that, when construing the allegations in a light most favorable to Plaintiff with reasonable inferences in her favor, as alleged, Alvarado-Cruz "[knew] that such distress [was] certain or substantially certain to result from [her] conduct." *White*, 585 So. 2d at 1210. Again, this is clear from the unlawful and intrusive nature of the search and seizure and the time and place in which they were conducted.

In sum, Plaintiff's IIED claim is plausible because it is "supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun*, 855 F. App'x at 919–20 (citations omitted). For all these reasons, Alvarado-Cruz's motion is denied on this claim.

### D. Negligence

#### 1. *Parties' Arguments*

Alvarado-Cruz maintains that Plaintiff fails to plead any element of a negligence claim. (Doc. 89-1 at 14–15.) Specifically, Plaintiff cannot show that Alvarado-Cruz acted unreasonably under the circumstances. (*Id.* at 15.) "Officer Alvarado-Cruz was called to conduct a search of Plaintiff solely because she is a female officer and based on the reasonable suspicion of her fellow officers[,]" and other courts have upheld cavity searches under similar circumstances. (*Id.* (citations omitted).) Plaintiff also fails to plead a duty. (*Id.*)

Plaintiff responds that Alvarado-Cruz's argument that she was not negligent because she was a woman and that it would have been worse had a man committed the tort "is no argument at all." (Doc. 98 at 9.) The search was unreasonable, and Alvarado-Cruz failed to act as a reasonably prudent person under the circumstances. (*Id.*)

In reply, Alvarado-Cruz reiterates that she did not act unreasonably under the circumstances. (Doc. 99 at 8.)

#### 2. *Applicable Law*

"The duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability under" Article 2315. *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095 (La. 3/10/06), 923 So.2d 627, 632–33 (citing *Mathieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94), 646 So. 2d. 318, 321). Under this analysis, a plaintiff must prove five separate elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Id.* at 633 (citing *Fowler v. Roberts*, 556 So. 2d 1, 4 (La. 1989), *reh'g granted on other grounds and original opinion reinstated as supplemented*, 556 So. 2d at 13 (La. 1990)). "A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability." *Id.* (citing *Mathieu*, 646 So. 2d at 326).

### 3. Analysis

The Court finds that Alvarado-Cruz's motion is easily denied on this issue. As pled, Alvarado-Cruz performed an unlawful and highly invasive search and seizure in an illegal and unofficial warehouse. As alleged, she failed to act as a reasonably prudent officer under the circumstances, so Plaintiff's negligence claim will survive.

### V. CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 89) filed by Defendant Katherinne F. Alvarado-Cruz is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>February 19, 2025</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

27