**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**TERNELL L. BROWN**

**VERSUS**

**TROY LAWRENCE, JR., ET AL.**

**CIVIL ACTION**

**NO. 23-1313-JWD-EWD**

**RULING AND ORDER ON**
<u>**WALLACE'S MOTION TO DISMISS**</u>

This matter comes before the Court on the *Motion to Dismiss* (Doc. 82) filed by Defendant Matthew Wallace ("Wallace"). Plaintiff, Ternell Brown, ("Plaintiff" or "Brown") opposes the motion, (Doc. 88), and Wallace has filed a reply, (Doc 94). Both parties have also submitted supplemental briefs, (Docs. 102, 103), in response to a July 7, 2024, *Ruling* by Chief Judge Dick, (Doc. 100). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Wallace's motion is denied.

I. **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

This case is one of several in this district involving the Baton Rouge Police Department's ("BRPD's") "BRAVE Cave." (*See Second Amended Complaint with Jury Demand* ("*SAC*"), Doc. 78 at 1–2.) While the Brave Cave has been subject to various news accounts, the operative complaint defines the Brave Cave as follows:

> "The BRAVE Cave" is an unmarked BRPD facility . . . that was closed in September 2023 shortly after reports of torture committed by members of the Street Crimes Unit became public. It is not a jail or detention facility; no correctional staff work at "the BRAVE Cave." Rather, it is a warehouse that the Street Crimes Unit has adopted as their home base over the past several years. It is a place where BRPD takes suspects to interrogate them, gather intelligence, and attempt to "flip" them to begin cooperating with BRPD.

(*Id.* ¶ 24.)

The relevant facts and procedural history of this case were summarized in detail by the Court in its ruling on another defendant's motion to dismiss, (Doc 114), and the Court need not repeat that in full here. In sum, Plaintiff alleges that, on June 10, 2023, around 5:17 p.m., she and her husband were driving in the 2500 block of Plank Rd., when two members of the BRPD's "Street Crimes Unit" (defendants Wallace and Troy Lawrence Jr.) initiated a traffic stop. (*SAC* ¶¶ 5–8, Doc. 78.) Brown was carrying different prescription pills in the same pill bottle. (*Id.* ¶ 16.) Even though Plaintiff offered at least four times to prove that she was in lawful possession of the pills, the officers rebuffed her entreaties and instead took her to the Brave Cave. (*Id.* ¶¶ 17–27.) There, Brown was held for two hours and ultimately strip searched before being released. (*Id.* ¶¶ 28–31.) Specifically, Plaintiff alleges:

> Defendants Lawrence, Wallace, and Alvarado[-Cruz] subjected Mrs. Brown to Strip and Body Cavity searches. . . . At the request of Wallace and Lawrence, Alvarado[-Cruz] examined Mrs. Brown, forced her to spread her vagina and buttocks for inspection, and examined her vagina using a flashlight. Defendants Lawrence, Wallace, Doe, and Alvarado[-Cruz] did not have a warrant, probable cause, or consent to conduct either a Strip or a Body Cavity search. . . . Once satisfied that Mrs. Brown was not hiding a weapon or contraband in her rectum or vagina, she was released from "the BRAVE Cave" without charge.

(*Id.* ¶¶ 30–32.)

The *SAC* brings claims against Lawrence, Wallace, Alvarado-Cruz, certain unknown officers, BRPD,[1] the City of Baton Rouge, and Parish of Baton Rouge. (*Id.* ¶ 4.) Count I is a claim under 42 U.S.C. § 1983 for an unreasonable search in violation of the Fourth Amendment against Lawrence, Wallace, Doe, and Alvarado-Cruz for "participat[ing] and facilitat[ing] her strip-search

---

[1] The question of whether Plaintiff in fact brings claims against BRPD will be addressed in the ruling on the City/Parish's motion to dismiss. (*See* Doc. 83-2 at 4–7; Doc. 87 at 1.)

2

inside the BRAVE Cave." (*Id.* ¶ 162.) Count II alleges an unreasonable seizure in violation of the Fourth Amendment against the same defendants for Plaintiff's being "forcibly transported [ ] to the BRAVE Cave (Lawrence, Wallace, Doe) and [ ] participat[ing] in holding her there for hours (Lawrence, Wallace, Doe, Alvarado[-Cruz])," all "without a warrant and without probable cause." (*Id.* ¶¶ 164–65.) Counts III and IV allege *Monell* liability for Counts I and II against the City/Parish. (*Id.* ¶¶ 167–173.) And Counts V through IX assert state law claims of battery, assault, intentional infliction of emotional distress, false imprisonment, and negligence against all defendants. (*Id.* ¶ 174.) Count X pleads state constitutional violations. (*Id.* ¶ 182.)

All Defendants filed motions to dismiss for failure to state a claim. (Docs. 82, 83, 85, 89.) Again, the Court previously denied Alvarado-Cruz's, finding, inter alia, that Plaintiff stated viable claims under § 1983 for an unreasonable search and seizure. (Doc. 114.) The Court now takes up Wallace's motion. (Doc. 82.)

## II. RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the

3

light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

#### A. Parties' Arguments

Wallace seeks dismissal of Plaintiff's § 1983 claims. (Doc. 82.) As to unreasonable seizure, Wallace asserts that he was not required to prove the absence of a valid prescription; rather, Plaintiff had the burden to demonstrate that the drugs were possessed pursuant to one. (Doc. 82-1 at 6–7.) As to the unlawful search claim, Wallace argues (1) that the *SAC* alleges that Alvarado-Cruz performed the search, not Wallace; and (2) that, in any event, Wallace is entitled to qualified immunity because (a) the law was not clearly established that a search was unlawful under these

circumstances, and (b) in fact, the weight of authority allows a strip search like this incident to a lawful arrest. (*Id.* at 7–9.)

Plaintiff disputes both arguments. (Doc. 88 at 1–2.) As to wrongful seizure, the *SAC* makes clear that Plaintiff did in fact have lawful prescriptions and that the officers refused her attempts to offer proof of same. (*Id.* at 2.)

> Wallace does not argue, because he cannot argue, that he reasonably believed Mrs. Brown lacked authorization to possess the pills in the form of a lawful prescription. And nothing about these statutes remotely hints that it might be unlawful for someone who *is* lawfully prescribed a particular medication to appear in public with such medicine (particularly if they have a digital copy of that prescription on their person).

(*Id.* at 3.) Brown says that no case finds "probable cause to arrest someone because they failed to carry a physical copy of their prescription on their person . . . [b]ecause it is obviously legal for a person with a lawful prescription to carry prescription drugs (even if she mixes two multiple prescriptions in the same container)[.]" (*Id.*) Thus, Wallace is not entitled to qualified immunity. (*Id.*) Wallace is also not entitled to qualified immunity on the unlawful search claim because it is clearly established that a strip search cannot be justified on reasonable suspicion. (*Id.* at 4.)

In reply, Wallace reiterates that he had probable cause to seize Plaintiff under the facts alleged in the *SAC*. (Doc. 94 at 2.) The *SAC* is silent on how Brown intended to prove her prescriptions were lawful, and there is no allegation that she offered the original prescription bottle for each pill. (*Id.*) This is significant because La. Rev. Stat. § 40:991(A) establishes this as proof of a valid prescription. (*Id.* at 3.) Wallace then offers unreported out-of-circuit decisions to support a finding that he is entitled to qualified immunity. (*Id.* at 3–4.) Further, Wallace maintains that the strip search did not violate clearly established law because it was conducted incident to a lawful arrest. (*Id.* at 4–5.)

5

In supplemental briefing, Wallace contends that Judge Dick's ruling on BRPD's policy has no impact on Plaintiff's claims or the defendants' qualified immunity. (Doc. 102 at 1.) Wallace reiterates what Alvarado-Cruz did in her briefing: that Brown was strip searched in connection with a lawful arrest. (*Id.* at 2–3.) Conversely, as detailed in the Court's prior ruling, (Doc. 114 at 11–13), Plaintiff maintains that (1) she was not arrested when she was brought to the Brave Cave, and (2) even if she was, the arrest was unlawful, so the search was as well. (*See* Doc. 103 at 4.)

### B. Law and Analysis

Having carefully considered the matter, the Court will deny Wallace's motion, largely for the reasons given in its ruling on Alvarado-Cruz's substantially similar one. First, the Court finds that, even assuming that Wallace's taking Plaintiff to a facility like the Brave Cave qualified as an "arrest," that "arrest" was still unlawful because there was no probable cause to support it.

Wallace maintains that Plaintiff failed to satisfy her burden under La. Rev. Stat. § 40:991 of providing proof of a valid prescription. Wallace points to the fact that, under § 40:991, a person claiming possession of a valid prescription "shall have the obligation to produce sufficient proof of a valid prescription to the appropriate prosecuting office" and that "[p]roduction of the original prescription bottle with the defendant's name, the pharmacist's name, and prescription number shall be sufficient proof of a valid prescription as provided for in this Section." *Id.*

The Court disagrees; even if this statute applied during traffic stops (which it doesn't, *see* La. Rev. Stat. § 40:991(C)),[2] the law does not describe the *only* method by which a valid prescription can be proven. For example, in *State v. Ruth*, the prosecution argued that the lower court abused its discretion in granting a motion to quash based on an IRS statement from the defendant's pharmacy, which the State maintained was not a valid method of proof under the

---

[2] "Any individual who claims the defense of a valid prescription for any controlled dangerous substance shall raise this defense before commencement of the trial through a motion to quash." La. Rev. Stat. § 40:991(C).

6

language of the statute. 2013-1547 (La. App. 4 Cir. 8/6/14), 147 So. 3d 1177, 1179. The Fourth Circuit rejected this position as "unfounded" and affirmed, in part because, "while it may be preferential to keep medication in a prescription-labeled bottle, patients, for various reasons, often choose not to do so and this, in and of itself, is not unlawful." *Id.*

Similarly, there was nothing unlawful under Louisiana law about a person keeping her prescriptions in the same bottle, particularly when that person offered at least four times to provide proof that the prescriptions were valid. The fact that the *SAC* did not specify the method of proof is irrelevant, specifically since, at the motion to dismiss phase, the complaint only needs to provide "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun*, 855 F. App'x at 919–20 (quoting *Twombly*, 550 U.S. at 556). Finally, it is important to emphasize that there are absolutely no other facts alleged that would remotely justify a finding of probable cause in this case. As a result, Wallace is not entitled to qualified immunity for the unlawful seizure claim.

Likewise, Wallace is not entitled to qualified immunity for the unlawful search. As explained in the prior ruling, the law was clearly established at the time of this incident that probable cause was needed to perform a strip search, *see Lee v. Lawrence*, No. 23-1229, 2024 WL 3385644, at *10–11 (M.D. La. July 12, 2024) (Dick, C.J.) (relying on *Sims v. City of New Orleans*, No. 03-3169, 2005 WL 1400440, at *13–14 (E.D. La. June 6, 2005) (Engelhardt, J.) (surveying Supreme Court and Fifth Circuit jurisprudence and concluding that "the law was clearly established that strip searching individuals, about whom the police had no individualized probable cause of weapon or contraband possession, was unlawful." (citing, *inter alia*, *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1007 (5th Cir. 2003) ("*Ybarra*, *Stewart* and *Watt* dispel any doubt that the law was clearly established by the night of the raid in April, 1995, that strip searching individuals,

7

about whom the police had no individualized probable cause of weapon or drug possession, was unlawful.")))). Thus, Wallace cannot prevail on this ground.

Nor can Wallace succeed by arguing that he was not a participant in the search. In *Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir. 1989), an officer tried to "evade liability" for a search because he was not the officer who actually entered the apartment and conducted the search. The Fifth Circuit rejected this position because the officer "was a full, active participant in the search, not a mere bystander." *Id.* Specifically, the officer "proceeded to [the victim's] door with [the other officer], and stood at the door armed with his gun while [the other officer] went into the apartment." *Id.* "Both men thus performed police functions that were integral to the search. Because the jury could properly have found that the search was unconstitutional, it was also justified in finding both officers liable for their integral participation in the violation." *Id.*

Here, Plaintiff alleges that Wallace and Lawrence brought Plaintiff to the Brave Cave "to be further searched and questioned." (*SAC* ¶ 26, Doc. 78.) Moreover, the *SAC* states that "Defendants Lawrence, Wallace, and Alvarado[-Cruz] subjected Mrs. Brown to Strip and Body Cavity searches" and that

> *At the request of Wallace and Lawrence*, Alvarado[-Cruz] examined Mrs. Brown, forced her to spread her vagina and buttocks for inspection, and examined her vagina using a flashlight. Defendants Lawrence, Wallace, Doe, and Alvarado[-Cruz] did not have a warrant, probable cause, or consent to conduct either a Strip or a Body Cavity search.

(*Id.* ¶¶ 30–31 (emphasis added).) Lastly, Count I is specifically brought against Wallace and the other officers for "participat[ing] and facilitat[ing] her strip-search inside the BRAVE Cave." (*Id.* ¶ 162.)

Under the above case law, Wallace was "a full, active participant in the search, not a mere bystander," and he *"*performed police functions that were integral to the search." *See Melear*, 862

8

F.2d at 1186. As a result, Wallace's motion will be denied as to the unlawful search claim. *See also James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (relying on *Melear* and concluding that the district court improperly granted summary judgment to "backup" officers who "did not physically perform the pat-down search of" plaintiff but who "remained armed on the premises throughout the entire search" and "guarded the detained customers outside the shop while the search and arrest proceeded inside" (citing *Creamer v. Porter* 754 F.2d 1311, 1316 (5th Cir.1985) (finding that an officer who was "present until the search was completed and the seized items removed from the premises" was more than a bystander and therefore was improperly dismissed from the case)); *Magee v. Pike Cnty.*, No. 19-52, 2019 WL 7040627, at *5–6 (S.D. Miss. Dec. 20, 2019) (relying on *Melear* and *James* and denying deputy's motion for judgment on the pleadings or, in the alternative, motion for summary judgment on plaintiff's unlawful detention claim because the officer was "present at the scene," because "[t]here [was] a genuine issue of material fact as to whether [the officer] performed police functions that were integral . . . ," and because the officer did "not provide a single reason for detaining" the plaintiff so as to justify the seizure).

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 82) filed by Defendant Matthew Wallace is **DENIED**.

Signed in Baton Rouge, Louisiana, on February 19, 2025.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**