## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**TERNELL L. BROWN**

**CIVIL ACTION**

**VERSUS**

**NO. 23-1313-JWD-EWD**

**TROY LAWRENCE, JR., ET AL.**

### RULING AND ORDER ON
### LAWRENCE'S MOTION TO DISMISS

This matter comes before the Court on the *Motion to Dismiss* (Doc. 85) filed by Defendant Troy Lawrence, Jr. ("Lawrence"). Plaintiff, Ternell Brown, ("Plaintiff" or "Brown") opposes the motion, (Doc. 93), and Lawrence has filed a reply, (Doc 96). Both parties have also submitted supplemental briefs, (Docs. 103, 106), in response to a July 7, 2024, *Ruling* by Chief Judge Dick, (Doc. 100). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Lawrence's motion is denied.

### I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This case is one of several in this district involving the Baton Rouge Police Department's ("BRPD's") "BRAVE Cave." (*See Second Amended Complaint with Jury Demand* ("*SAC*"), Doc. 78 at 1–2.) While the Brave Cave has been subject to various news accounts, the operative complaint defines the Brave Cave as follows:

> "The BRAVE Cave" is an unmarked BRPD facility . . . that was closed in September 2023 shortly after reports of torture committed by members of the Street Crimes Unit became public. It is not a jail or detention facility; no correctional staff work at "the BRAVE Cave." Rather, it is a warehouse that the Street Crimes Unit has adopted as their home base over the past several years. It is a place where BRPD takes suspects to interrogate them, gather intelligence, and attempt to "flip" them to begin cooperating with BRPD.

(*Id.* ¶ 24.)

The relevant facts and procedural history of this case were summarized in detail by the Court in its ruling on another defendant's motion to dismiss, (Doc 114), and the Court need not repeat that in full here. In sum, Plaintiff alleges that, on June 10, 2023, around 5:17 p.m., she and her husband were driving in the 2500 block of Plank Rd., when two members of the BRPD's "Street Crimes Unit" (defendants Matthew Wallace and Lawrence) initiated a traffic stop. (*See SAC* ¶¶ 5–9, Doc. 78.) More specifically, the *SAC* alleges that both officers observed Plaintiff's car, (*id.* ¶ 5); that "Wallace elected to conduct a traffic stop on the car, and immediately notified Lawrence that he was doing so[,]" (*id.* ¶ 6); that Wallace ordered the stop, (*id.* ¶ 7); and that "Lawrence arrived on the scene within 15 seconds to assist in the seizure of the car's passengers[,]" (*id.* ¶ 9).

In any event, Brown was carrying different prescription pills in the same pill bottle. (*Id.* ¶ 16.) Even though Plaintiff offered at least four times to prove that she was in lawful possession of the pills, the officers rebuffed her entreaties and instead took her to the Brave Cave. (*Id.* ¶¶ 17–27.) In particular, Plaintiff pleads:

> Wallace and Lawrence then ordered Mrs. Brown into a BRPD vehicle driven by BRPD OFFICER JOHN DOE. Wallace, Lawrence, and DOE forcibly (i.e., without her consent) transported Mrs. Brown to "the BRAVE Cave" by ordering her into DOE's vehicle in handcuffs. Wallace explained to DOE the plan to search her based on her pills, but intentionally turned off his BWC's audio immediately before doing so. Wallace and Lawrence drove to the BRAVE Cave separately and met DOE and Mrs. Brown there.

(*Id.* ¶ 23.)

There, Brown was held for two hours and ultimately strip searched before being released. (*Id.* ¶¶ 28–31.) Specifically, Plaintiff alleges:

> Defendants Lawrence, Wallace, and Alvarado[-Cruz] subjected Mrs. Brown to Strip and Body Cavity searches. . . . At the request of Wallace and Lawrence, Alvarado[-Cruz] examined Mrs. Brown, forced her to spread her vagina and buttocks for inspection, and examined her vagina using a flashlight. Defendants Lawrence, Wallace, Doe, and Alvarado[-Cruz] did not have a warrant, probable cause, or consent to conduct either a Strip or a Body Cavity search. . . . Once satisfied that Mrs. Brown was not hiding a weapon or contraband in her rectum or vagina, she was released from "the BRAVE Cave" without charge.

(*Id.* ¶¶ 30–31.)

The *SAC* brings claims against Lawrence, Wallace, Alvarado-Cruz, certain unknown officers, BRPD,[1] the City of Baton Rouge, and Parish of Baton Rouge. (*Id.* ¶ 2.) Count I is a claim under 42 U.S.C. § 1983 for an unreasonable search in violation of the Fourth Amendment against Lawrence, Wallace, Doe, and Alvarado-Cruz for "participat[ing] and facilitat[ing] her strip-search inside the BRAVE Cave." (*Id.* ¶ 162.) Count II alleges an unreasonable seizure in violation of the Fourth Amendment against the same defendants for Plaintiff's being "forcibly transported [ ] to the BRAVE Cave (Lawrence, Wallace, Doe) . . . and [ ] participat[ing] in holding her there for hours (Lawrence, Wallace, Doe, Alvarado[-Cruz])," all "without a warrant and without probable cause." (*Id.* ¶¶ 164–65.) Counts III and IV allege *Monell* liability for Counts I and II against the City/Parish. (*Id.* ¶¶ 167–173.) And Counts V through IX assert state law claims of battery, assault, intentional infliction of emotional distress ("IIED"), false imprisonment, and negligence against all defendants. (*Id.* ¶ 174.) Count X pleads state constitutional violations. (*Id.* ¶ 182.)

All Defendants filed motions to dismiss for failure to state a claim. (Docs. 82, 83, 85, 89.) Again, the Court previously denied Alvarado-Cruz's, finding, inter alia, that Plaintiff stated viable claims under § 1983 for an unreasonable search and seizure and under Louisiana state law for the

---

[1] The question of whether Plaintiff in fact brings claims against BRPD will be addressed in the ruling on the City/Parish's motion to dismiss. (*See* Doc. 83-2 at 4–7; Doc. 87 at 1.)

torts listed above. (Doc. 114.) The Court also denied Wallace's, determining, for similar reasons, that Plaintiff sufficiently pled § 1983 claims. (Doc. 115.) The Court now takes up Lawrence's motion. (Doc. 85.)

## II.   RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting

4

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

## III.  DISCUSSION

### A.  Parties' Arguments

Lawrence's argument boils down to the following:

1. He did not stop the vehicle driven by Plaintiff.
2. He did not search Plaintiff's vehicle.
3. He did not transport Plaintiff to "the BRAVE cave."
4. He did not search Plaintiff while at "the BRAVE cave."

(Doc. 85-1 at 4.) Thus, says Lawrence, he is entitled to qualified immunity for Brown's unreasonable search claim. (*Id.* at 8.) Further, Lawrence had reasonable suspicion that criminal activity was afoot, so he is entitled to qualified immunity for the unreasonable seizure claim. (*Id.* at 8–9.) Plaintiff's claims under state law are merely a "formulaic recitation of the elements of a cause of action" which is impermissible under *Twombly*. (*Id.* at 10.) Lawrence is also entitled to qualified immunity for the state law constitutional claims, for the same reasons as the federal claims. (*Id.* at 10–12.) Finally, Lawrence is entitled to the discretionary act immunity with respect to Plaintiff's state law torts. (*Id.* at 12–15.)

Plaintiff responds by stating that Lawrence ignores the allegations in the *SAC* going to her unlawful seizure claim. (Doc. 93 at 2–3 (detailing *SAC*).) The fact that others engaged in other wrongdoing may be evidence of a conspiracy under 18 U.S.C. § 241, but it does not excuse or vitiate Lawrence's liability for the unlawful seizure. (*Id.* at 3.) Lawrence personally participated in the wrongdoing, but, at the very least, he is liable as a bystander. (*Id.*) Plaintiff then details the

5

allegations of the *SAC* which support the unlawful search claim. (*Id.* at 4–5.) Plaintiff next recaps those parts of the *SAC* which go to his state law claims. (*Id.* at 5–7.) As to the qualified immunity question, Plaintiff has written "ad nauseum" about how strip searches cannot be based on reasonable suspicion, so Lawrence's position does not hold water. (*Id.* at 7–8.) Similarly, the discretionary act immunity does not apply (1) because Lawrence was not involved in any policymaking or discretionary acts within the meaning of La. Rev. Stat. § 9:2798.1(B), and (2) his conduct fell outside the protection of this statute by being "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct" under La. Rev. Stat. § 9:2798.1(C). (*Id.* at 8–10.)

In response, Lawrence argues first that criminal statutes like 18 U.S.C. § 241 do not afford Plaintiff a "private right of action," and, in any event, the *SAC* fails to allege that Plaintiff engaged in a conspiracy. (Doc. 96 at 2–3.) Plaintiff also failed to pled bystander liability, and she has not shown that all officers would have known the Constitution required them to intervene. (*Id.* at 3.) As to the unlawful search claim, Plaintiff has not shown that Lawrence was "personally involved" with the search; in fact, Plaintiff claims that the female officer searched Plaintiff while Lawrence remained on the scene. (*Id.* at 5.) With the exception of Plaintiff's false imprisonment claim (which Lawrence concedes is plausibly alleged, *id.* at 8)), Brown's other state law claims fail as well because: (1) there is no allegation that Lawrence used or threatened to use unreasonable force during the detention; (2) Plaintiff's IIED claims are conclusory; (3) Lawrence breached no duty to Plaintiff so as to be liable for negligence; (4) Lawrence is entitled to qualified immunity under Louisiana state law; and (5) Lawrence is also entitled to discretionary act immunity because his conduct was not callously indifferent to Brown. (*Id.* at 5–10.)

6

In supplemental briefing, Lawrence contends that Judge Dick's ruling on BRPD's policy has no impact on Plaintiff's claims or defendants' qualified immunity. (Doc. 106 at 1–2.) Lawrence reiterates his prior briefs, namely, that Brown's *SAC* "pleads the utter lack of [ ] Lawrence's personal involvement in her stop, detention, and search." (*Id.* at 2.) Again, "Lawrence (a) did not stop Plaintiff's vehicle, (b) did not search Plaintiff's vehicle, (c) did not transport Plaintiff to the 'BRAVE Cave', and (d) did not search Plaintiff's person." (*Id.*) Lawrence also references the body-camera footage from the officers, arguing that:

> [The] video footage clearly shows that Plaintiff's husband (who was an occupant of the vehicle) was in possession of a marijuana cigarette and, upon inspection of the vehicle, the vehicle contained invalid vehicle insurance, a handgun, marijuana, an alcoholic beverage container, and at least one pill bottle with multiple types of medications in the bottle.

(*Id.* at 3.) Lastly, Lawrence reiterates what Alvarado-Cruz and Wallace did in their briefing: that Brown was strip searched in connection with a lawful arrest. (*Id.* at 3–4.)

Conversely, as detailed in the Court's prior ruling, (Doc. 114 at 11–13), Plaintiff maintains that (1) she was not arrested when she was brought to the Brave Cave, and (2) even if she was, the arrest was unlawful, so the search was as well. (*See* Doc. 103 at 4.)

## B. Law and Analysis

Having carefully considered the matter, the Court will deny Lawrence's motion, largely for the reasons given in its rulings on Alvarado-Cruz and Wallace's motions. In short, Plaintiff has stated viable claims for each tort and constitutional violation pled.

Preliminarily, Lawrence is not entitled to qualified immunity for the unlawful search. As explained in the prior rulings, the law was clearly established at the time of this incident that probable cause was needed to perform a strip search, *see Lee v. Lawrence*, No. 23-1229, 2024 WL 3385644, at \*10–11 (M.D. La. July 12, 2024) (Dick, C.J.) (relying on *Sims v. City of New Orleans*,

No. 03-3169, 2005 WL 1400440, at *13–14 (E.D. La. June 6, 2005) (Engelhardt, J.) (surveying Supreme Court and Fifth Circuit jurisprudence and concluding that "the law was clearly established that strip searching individuals, about whom the police had no individualized probable cause of weapon or contraband possession, was unlawful." (citing, *inter alia*, *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1007 (5th Cir. 2003) ("*Ybarra*, *Stewart* and *Watt* dispel any doubt that the law was clearly established by the night of the raid in April, 1995, that strip searching individuals, about whom the police had no individualized probable cause of weapon or drug possession, was unlawful.")))). Thus, based on the allegations in the *SAC*, since there was no probable cause for the search, Lawrence cannot prevail on this ground.

Nor is Lawrence entitled to qualified immunity for the unlawful seizure claim. A *Terry* stop must be based on "reasonable suspicion supported by articulable facts that criminal activity may be afoot," *see Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 366–67 (M.D. La. 2022) (summarizing standard), and, here, as detailed in the Court's prior rulings, there are absolutely no facts alleged in the *SAC* supporting a finding of reasonable suspicion to initiate the traffic stop or hold Plaintiff during it. (*See* Doc. 114 at 14–18; Doc. 115 at 6–9 (citing, inter alia, *State v. Ruth*, 2013-1547 (La. App. 4 Cir. 8/6/14), 147 So. 3d 1177, 1179 ("while it may be preferential to keep medication in a prescription-labeled bottle, patients, for various reasons, often choose not to do so and this, in and of itself, is not unlawful.").) And, as also detailed elsewhere by the Court, even if Plaintiff was arrested as a matter of law (as the defendants now claim), there was no probable cause to support that arrest, so the arrest was unlawful on that ground as well. Thus, Lawrence is not entitled to qualified immunity for the unlawful seizure claim—a fact which seems obvious from his concession that Plaintiff stated a viable false imprisonment claim under state law.

Putting all of that aside, the heart of Lawrence's motion is that he did not personally search or seize Brown. But this is not a winning argument; as the Court previously stated with respect to Wallace, Lawrence can be found personally liable if he was a "full, active participant in the search [or seizure], not a mere bystander" and if he "performed police functions that were integral to" them. *Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir. 1989); *see also James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Creamer v. Porter*, 754 F.2d 1311, 1316 (5th Cir. 1985)); *Magee v. Pike Cnty.*, No. 19-52, 2019 WL 7040627, at *5–6 (S.D. Miss. Dec. 20, 2019). Construing the allegations of the *SAC*, detailed above, in a light most favorable to Plaintiff and drawing reasonable inferences in her favor, a reasonable jury could conclude that Lawrence satisfied this standard for the unlawful search and seizure claims. Lawrence did not initiate the stop, but he observed Plaintiff's car, was immediately notified that Wallace was stopping Plaintiff, and "arrived on the scene within 15 seconds to assist in the seizure of the car's passengers." (*SAC* ¶¶ 5–9, Doc. 78.) Lawrence did not physically transport Brown to the Brave Cave, but he "ordered [her] into" Doe's vehicle "in handcuffs" and "drove to the BRAVE Cave separately and met Doe and [her] there." (*Id.* ¶ 23.) And Lawrence did not actually perform the strip and body cavity search, but he brought Brown to the Brave Cave "to be further searched and questioned," (*id.* ¶ 26); "request[ed]" that Alvarado-Cruz examine her, (*id.* ¶¶ 30–31); and "participated and facilitated her strip-search inside the BRAVE Cave," (*id.* ¶ 162). At the very least, there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." *Calhoun*, 855 F. App'x at 919–20 (cleaned up). Thus, Lawrence is not entitled to qualified immunity under federal or state law.

For similar reasons, the Court finds that Lawrence's alleged misconduct, summarized above, sufficiently states a claim for negligence; his participation in the detention and search, all

without reasonable suspicion or probable cause, falls below the standard of a reasonably prudent

officer under the circumstances.

Lawrence is also not entitled to discretionary act immunity. La. Rev. Stat. § 9:2798.1

provides in relevant part:

> B. Liability shall not be imposed on public entities or their officers
> or employees based upon the exercise or performance or the failure
> to exercise or perform their policymaking or discretionary acts when
> such acts are within the course and scope of their lawful powers and
> duties.
>
> C. The provisions of Subsection B of this Section are not applicable:
> (1) To acts or omissions which are not reasonably related to the
> legitimate governmental objective for which the policymaking or
> discretionary power exists; or
> (2) To acts or omissions which constitute criminal, fraudulent,
> malicious, intentional, willful, outrageous, reckless, or flagrant
> misconduct.

"The list in paragraph (C)(2) of La. R.S. 9:2798.1 . . . connotes conduct more severe than

negligent behavior. Recklessness is, in effect, 'gross negligence.'" *Mariana v. Magnolia Auto*

*Transp., LLC*, 21-447 (La. App. 5 Cir. 5/26/22), 341 So. 3d 1281, 1291.

> Only the most egregious conduct by parish agents, employees, or
> representatives that exhibits an active desire to cause harm, or a
> callous indifference to the risk of potential harm from flagrantly bad
> conduct, will rise to the level of "willful misconduct" or "criminal,
> willful, outrageous, reckless, or flagrant misconduct" resulting in a
> forfeiture of all the immunity protections afforded by the
> discretionary immunity statute.

*Id.* (citing *Haab v. East Bank Consol. Special Serv. Fire Prot. Dist. of Jefferson Par.*, 13-954 (La.

App. 5 Cir. 5/28/14), 139 So. 3d 1174, 1182).

Under this standard, Lawrence's claim for immunity easily fails. Construing the allegations

in a light most favorable to Plaintiff, with reasonable inferences drawn in her favor, a reasonable

jury could conclude that Lawrence's conduct—in detaining this grandmother without probable

cause, refusing her constant entreaties to provide proof of her prescriptions, transporting her to an unofficial and unlawful warehouse, and participating in and causing a humiliating strip and body cavity search of her, all without reasonable suspicion or probable cause—is sufficiently outrageous and flagrant to disqualify him from the protection of this immunity statute.

And for the same reasons, Plaintiff has stated a claim for IIED. As detailed in the Alvarado-Cruz ruling, Lawrence's conduct was "extreme and outrageous," caused plaintiff severe emotional distress, and was such that Lawrence knew that severe emotional distress was substantially certain to occur. *See White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

This leaves only the assault and battery claims. This Court has recognized:

> To prevail on a claim of battery under Louisiana law, a plaintiff must prove three elements: (1) a subjective intent by defendant to inflict a harmful or offensive contact without plaintiff's consent; (2) unwelcome contact without consent; and (3) a harmful or offensive touching. *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987). "The intent with which tort liability is concerned is not necessarily a hostile intent or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids.

*Golden v. Columbia Cas. Co.*, No. 13-547, 2015 WL 3650761, at *26 (M.D. La. June 11, 2015) (deGravelles, J.) (quoting *Simmons v. Johnson*, No. 06–325, 2008 WL 3976928, at *5 (M.D. La. Aug. 22, 2008)). "An assault takes place when the defendant intentionally places plaintiff in imminent apprehension of a harmful or offensive contact when the defendant has the apparent ability to carry out the threatened conduct at the time." *Id.* (quoting *Simmons¸* 2008 WL 3976928, at *5 (citing 18 H. Alston Johnson, La. Civ. L. Treatise, Civil Jury Instructions § 14, 04)).

Critically, "[b]attery does not require direct bodily contact between the actor and the victim. The contact may be with an inanimate object controlled or precipitated by the actor, such as the surgeon's scalpel, a bullet, a car in which a person is sitting, or [ ] even a thrown hamburger."

Frank L. Maraist & Thomas G. Galligan, Jr., *Louisiana Tort Law* § 2.09[1] (2d ed. 2023) (citations

omitted). These professors offer as one example *Zimmerman v. Progressive Security Insurance

Co.*, 49,982 (La. App. 2 Cir. 8/12/15), 174 So. 3d 1230, 1234–39, where the appellate court found

that the jury did not err in concluding that plaintiff met his burden of proving liability for the tort

of battery when defendant intentionally rammed plaintiff's vehicle three times.

For similar reasons, the Court finds that that Plaintiff stated a viable claim for battery and

assault against Lawrence. Again, Wallace and Lawrence brought her to the Brave Cave "to be

further searched and questioned." (*SAC* ¶ 26, Doc. 78.) They "subjected Mrs. Brown to Strip and

Body Cavity searches," (*Id.* ¶ 30.) Equally critical,

> *At the request of Wallace and Lawrence*, Alvarado[-Cruz] examined
> Mrs. Brown, forced her to spread her vagina and buttocks for
> inspection, and examined her vagina using a flashlight. Defendants
> Lawrence, Wallace, Doe, and Alvarado[-Cruz] did not have a
> warrant, probable cause, or consent to conduct either a Strip or a
> Body Cavity search.

(*Id.* ¶¶ 31 (emphasis added).) Lastly, Count I is specifically brought against Lawrence and the

other officers for "participat[ing] and facilitat[ing] her strip-search inside the BRAVE Cave." (*Id.*

¶ 162.)

Under the circumstances, the Court finds that Plaintiff plausibly alleged that Lawrence

intended the harmful or offensive contact and directly caused it. As pled, he also placed Brown in

the imminent fear of a battery, and he had the present ability, through Alvarado-Cruz, to carry it

out. At the very least, the *SAC* contains "enough fact[s] to raise a reasonable expectation that

discovery will reveal evidence of [the alleged misconduct]." *Calhoun*, 855 F. App'x at 919–20

(cleaned up).

Additionally, for the reasons given in part in the Alvarado-Cruz ruling, at this stage and

looking solely at the *SAC*, any application of force against Plaintiff in handcuffing her appears

excessive under the totality of the circumstances. (*See* Doc. 114 at 21–23.) This is particularly true given the Plaintiff's age, the lack of any risk posed to the police officers, the minimal chance of the Plaintiff escaping, and the availability of alternative methods to handcuffing her. *See Imani*, 614 F. Supp. 3d at 380–81 (discussing relevant factors for battery by a police officer during detention and finding standard comparable to § 1983 excessive force cases).

In sum, Lawrence's motion will be denied in full; Plaintiff has stated viable claims for each tort and constitutional violation.

Nevertheless, the Court makes a few points in closing. First, Plaintiff raises in her opposition certain claims for a criminal conspiracy and bystander liability. These claims are not expressly made in the *SAC* and are thus not properly before the Court. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) ("it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." (quoting *In re Baker Hughes Sec. Litig.*, 136 F. Supp. 2d 630, 646 (S.D. Tex. 2001))). Plaintiff must amend the *SAC* if she seeks to assert those claims.

The same goes for certain potential claims in the *SAC* that are not referenced in Plaintiff's opposition but could arguably be implied—namely, a claim for conspiracy under § 1983 or under La. Civ. Code art. 2324 for conspiracy to commit an intentional tort under state law. Plaintiff must amend the complaint to plead these causes of action if she desires to assert them. While the Court will not rule on the viability of these express or implied claims at this stage, the Court does note that it appears highly likely from the existing allegations that any such claims, if asserted, would be plausible.

Second, Lawrence raises in his supplemental memorandum serious issues about the contents of bodycam footage. The purported facts asserted therefrom, if true, may have a

significant impact on whether the defendants are entitled to qualified immunity and whether Plaintiff's claims would survive the summary judgment phase. But, the Court has not seen this evidence (and does not intend to at the motion to dismiss phase), and so it reserves judgment.

For all these additional reasons, all counsel are reminded of their obligations under the Federal Rules of Civil Procedure. Specifically, they must have a good faith basis in law and fact before pursuing any claims, defenses, or arguments, *see* Fed. R. Civ. P. 11, and they must "construe[], administer[], and employ[]" the Federal Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 85) filed by Defendant Troy Lawrence, Jr., is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>February 19, 2025</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**